Marcus **BRAUN**, Respondent,

v.

**David M. LORENZ, Patricia M. Lorenz and B. Sterling Ambrose, Appellants.**

**No. KCD 30010.**

Missouri Court of Appeals, Western District.

June 11, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 12, 1979.

Application to Transfer Denied Sept. 11, 1979.

Billy S. Sparks, David R. Odegard, Kansas City, for appellants.

Don M. Jackson, Kansas City, for respondent.

Before SHANGLER, P. J., and WASSERSTROM and CLARK, JJ.

CLARK, Judge.

This action emanates from an agreement, now contested, but which purported at the time made to resolve prior disputes between appellants and respondent. Asserting claims as to his investment in a corporation known as International Oil Development Company, and a debt owed him by appellant Ambrose, respondent had filed suit against appellants in the United States District Court. On the eve of trial of that case, the subject agreement was made, was reduced to writing and was signed. Interpretation of the settlement agreement again divided the parties and generated this suit.

In the corporate transactions during relevant time periods, various names appear by reason of merger and change of corporate name. Except where otherwise required, the name "Oil Co." will be used to designate the corporation originally named International Oil Development Company, as well as successive combined and surviving companies.

In this suit for alleged breach of the settlement agreement, no issue was joined as to the execution of the agreement or its validity as a document binding the parties to obligations and conferring enforceable rights. Indeed, partial performance has eliminated from contest some subjects of the agreement. By the terms of settlement respondent was obligated to dismiss the federal court suit with prejudice and he did so. Respondent was required to vote his Oil Co. stock and support a corporate merger and that merger was concluded and stock was exchanged. The Ambrose debt was liquidated, as agreed, by a transfer to respondent of Oil Co. stock which had been pledged as collateral security.

Remaining at issue are the rights and obligations created by paragraph 3 of the December 1967 agreement, none of which it has been claimed were performed. The significance of the terms employed requires that the disputed paragraph be quoted in full:

"3. Party of the First Part hereby agrees to exchange Twenty-Four Thousand Eight Hundred (24,800) shares of International Oil Development Company, Inc. stock for Forty-Nine Thousand Six Hundred (49,600) shares of Southern Motel Investors, Inc. stock, said transfer of stock shares to be completed as soon as possible after the date hereof, and further agrees that said shares of stock shall be placed on the market at a price of no less than Two Dollars and 70/100 ($2.70) per share net to Party of the First Part; however in the event Party of the First Part does not realize and/or recover the sum of Seventy-Seven Thousand Three Hundred Dollars ($77,300.00), with interest thereon at Six (6%) percent per annum from date of each respective purchase by him of International Oil Development Company, Inc. stock, from the sale of Southern Motel Investors, Inc. stock within a period of Two (2) years from the date hereof, then Parties of the Second Part hereby agree and do guarantee to Party of the First Part, payment to Party of the First Part any and all monies representing the difference, if any, remaining between the sale of Southern Motel Investors, Inc. stock and $77,300.00, including interest thereon, and upon the receipt of said payment from Parties of

the Second Part to Party of the First Part, Party of the First Part hereby agrees to surrender, deliver and/or release any and all shares of the remaining Forty-Nine Thousand Six Hundred (49,600) shares of Southern Motel Investors, Inc. stock to Parties of the Second Part."

Material facts are essentially undisputed, the evidentiary contest on trial having centered on expressions of opinion and interpretation. From the trial transcript of 579 pages, the following essential facts and circumstances emerge.

As of the date of the agreement, shares of stock in Oil Co. and its predecessors were not registered for public offering and trading as required for third party transactions. The parties were aware that the stock was unregistered. Commencing in March 1968, respondent contacted securities dealers to enlist their aid in marketing the Oil Co. stock, but he was informed by the brokers that they were prohibited from offering any stock publicly which was not registered with the Securities and Exchange Commission or the Missouri Commissioner of Securities. Attempts by respondent himself to procure a sale of any of the stock were unsuccessful and at the conclusion of the two-year period specified in paragraph 3 of the agreement, respondent held the same Oil Co. shares as at the outset, subject only to the merger, transfers and name change described above.

Appellants made no payment to respondent on or subsequent to December 20, 1969 although respondent had informed them prior to expiration of the two-year period that little or no prospect for any open market sale of Oil Co. stock existed. As of January 1970, respondent was aware that controversy over performance of the agreement impended. At that time, however, respondent learned of a proposal for another corporate merger in which Oil Co. stock would be exchanged for that of Clark Manufacturing Company, a concern not previously related to any financial transactions among the parties. Upon inquiry, respondent learned that appellants intended to support the merger and vote their stock

accordingly. Respondent concluded on available information that the Clark Company was not financially sound but he resolved any doubts in favor of the merger as an opportunity for him to realize the minimum per share price of $2.70 provided in the agreement.

Respondent also was aware of rights available to him under Section 351.405, RSMo 1969 as a shareholder dissenting from the merger plan and that payment of the fair value of his Oil Co. shares could be demanded. Respondent elected to vote his shares in favor of the merger and received two shares of Clark Company stock for each share of Oil Co. stock. Although the Clark Company stock was unregistered as of the merger early in 1970, restrictions on sale of the Clark Company stock were removed in October 1971 by an opinion letter from counsel. Respondent retained ownership of the Clark Company stock until 1974 when that company was adjudicated bankrupt. The subject action was thereafter filed and this appeal follows a jury verdict which awarded respondent $77,300.00 and interest.

Appellants assert error in the giving of Instruction No. 5, the damage instruction, and Instruction No. 6 in which appellants were charged with the burden of proof on the issue of mitigation of damages. Error is also claimed in failure of the trial court to enter judgment for appellants notwithstanding the verdict for the reason that respondent failed to offer any evidence of damage. We conclude that the jury was erroneously instructed and reverse and remand for a new trial.

Respondent's theory of the case as briefed and argued on appeal is that paragraph 3 of the December 1967 agreement obligated appellants to pay respondent $77,300.00 in settlement of the federal court suit with payment deferred for two years and conditionally to be reduced by amounts realized, if any, through sale by respondent of Oil Co. stock during the interval. Upon receipt by respondent of payment of the settlement, appellants would be entitled, under respondent's theory, to receive Oil Co. stock, not as a purchase transaction but

as an incident to settlement of the monetary obligation incurred to conclude respondent's claims earlier advanced. Appellants' interpretation, however, viewed the agreement as one in which appellants contracted to purchase Oil Co. stock from respondent after two years if, by such date, respondent had not earlier sold the stock on equal or more advantageous terms.

A fundamental issue in this case was, therefore, the construction and intent of the agreement either as a promise for payment in settlement of respondent's claims, or a contract to purchase respondent's stock. The applicable language of the document in paragraph 3 is, at best, equivocal and cannot independently be assessed as clearly supporting either view. Whatever may be the conclusion on this account, the trial record demonstrates the manifest dispute generated on the issue and the divergent positions of the parties.

In an apparent attempt to submit the case to the jury on the contract payment obligation theory, respondent presented and the court gave a verdict directing instruction patterned after MAI No. 26.02 modified as follows:

"Instruction No. 2.

"Your verdict must be for plaintiff if you believe:

"First, plaintiff substantially performed his contract obligations by placing the stock referred to in the contract on the market for a period of two years, and

"Second, defendants failed to pay any money to the plaintiff at the end of two years from the date of the contract, and

"Third, because of such failure, defendants' contract obligations were not substantially performed, and

"Fourth, plaintiff was thereby damaged.

"MAI 26.02 Modified, Requested by Plaintiff."

Instructions on damages and mitigation of damages were also given as follows:

"Instruction No. 4.

"If your verdict is for plaintiff, then in assessing damages you must take into consideration the amount, if any, which plaintiff could have realized by the exercise of due diligence in selling the Oil and Properties, Inc. or Clark Manufacturing Company stock after the two year contract period.

"MAI 6.0. [6.01] Modified, Submitted by Defendants."

"Instruction No. 5.

"If you find the issues in favor of the plaintiff, then you must award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe he sustained as a direct result of the contract mentioned in the evidence together with interest thereon at the rate of 6% per annum from December 20, 1969.

"After you have determined such sums, if you believe that the plaintiff failed to mitigate damages as submitted in Instruction No. 4, then you must determine the amount such damages should have been mitigated and deduct that amount from the plaintiff's damages.

"Not in MAI. MAI 5.01 & 6.01 modified. First paragraph requested by plaintiff. Second paragraph requested by defendants."

Appellants' points of error do not directly assign any error in respondent's verdict directing instruction, but rather address the issues by allegations of error in the damage instructions. The instructions on damages and mitigation of damages are intelligible, however, only in the context of the primary question of what agreement was found by the jury to have been made by the parties and, hence, what measure of damages was applicable. Consideration of what appear to be fundamental deficiencies in the verdict directing instruction is therefore unavoidable.

As observed previously, the parties were sharply in disagreement as to the nature of appellants' obligations with respect to payment of the specified sum and transfer of the Oil Co. stock. Respondent, of course, was entitled to submit his claim on any theory consistent with the cause of action pleaded and supported by the evidence.

Despite the disputed interpretation of the agreement, respondent was not obliged to accede to appellants' construction of the paragraph 3 language and was entitled to submit the case on that theory which afforded a superior prospect for recovery. In any submission selected, however, the instruction must necessarily have hypothesized and have required the jury to find that interpretation of the agreement advanced by respondent.

Respondent's verdict director in paragraph two assumed that construction of the agreement supporting respondent's version of a contract for payment of money and required only a finding by the jury on nonpayment, a fact not contested. The essential disputed issue of what appellants had agreed, to pay a settlement or buy stock, was not posed and the jury was not permitted to decide the important question on which the balance of the case turned.

■ MAI No. 26.02 which is captioned "Verdict Directing—Breach of Bilateral Contract—Breach Sole Issue" was not designed nor intended for use in this type of case where the parties have joined an issue of what agreement was in fact made. MAI No. 26.02 is to be used only where the terms of the contract are not in question and the jury is to decide only the issues of breach and resultant damage. *Varn Co. v. Hamiltonian Federal Savings & Loan Assn.*, 488 S.W.2d 649 (Mo.1973); *Laclede Inv. Corp. v. Kaiser*, 541 S.W.2d 330 (Mo.App.1976); *North County School Dist. v. Fidelity & Deposit Co.*, 539 S.W.2d 469 (Mo.App.1976).

■■ Where a dispute exists as to one or more of the terms of the agreement relied on by the claimant to support recovery, that issue must be hypothesized in the verdict directing instruction. The contest as to appellants' agreement to pay respondent a particular sum in contrast to the alternative contention of an agreement to purchase stock required an instruction to the jury that a verdict be returned for respondent if the jury found an agreement by appellants to pay on the date and in the amount claimed and a failure to do so.

MAI No. 26.06 was adopted by the Supreme Court December 19, 1972 effective July 1, 1973 as appropriate for submission of the two-element dispute of contract terms and breach. The pattern instruction follows the form approved in *Gottlieb v. Hyken*, 448 S.W.2d 617 (Mo.1970). On respondent's theory of recovery, MAI No. 26.-06 was the appropriate form of instruction rather than MAI No. 26.02.

■ Turning now to the damage instructions of which appellants complain, the critical significance of failure to submit and resolve the primary dispute as to interpretation of appellants' contract obligation becomes apparent. If, as contended by respondent, the agreement was a present promise by appellants to pay in the future a stipulated sum less proceeds from stock sold by respondent, if any, there was no jury issue of damages. A verdict for respondent simply entitled him to recover the amount specified with interest. Williston, *Contracts* (Rev.Ed.) § 1410; *Restatement Contracts* § 337(a); *Sturgess v. Crum*, 29 Mo. App. 644 (1888).

■ If, however, the agreement was one for a future sale and delivery of stock, then damages were in issue and an appropriate instruction was required. Such instruction would inform the jury that the measure of damage is the difference between the price realized on resale of the article and the contract price or, if not resold, the difference between the market price and the contract price. Sections 400.2–703(d), (e); 400.-2–706; 400.2–708, RSMo 1969, Uniform Commercial Code. The burden is on the claimant to prove his damages in a breach of contract to purchase case and an instruction in the form of MAI No. 4.01 is required. *Gottlieb v. Hyken, supra*, l.c. 621.

In several particulars, Instruction No. 5, to the extent proferred by respondent, was confusing and a misdirection of the law. The invitation to the jury to award respondent damages in such sum as they believed would compensate him authorized speculation regarding what damages were recoverable and was inharmonious with respondent's theory that appellants were obligated

for payment of a specific sum. Compensation to respondent in damages, as such, was not an issue for the jury in the posture of the case presented because recovery was predicated on a claim for payment of an agreed, liquidated amount and no other evidence of damage was before the jury. The instruction was additionally erroneous as it failed to predicate an award on appellants' breach of the agreement as postulated in the verdict directing instruction but rather informed the jury that damages were compensable if sustained "as a direct result of the contract". The jury was thereby given a roving commission to return a verdict for whatever damage they considered to have been sustained by respondent through the misadventures of the agreement and its antecedents.

■■ Instruction No. 4 on mitigation of damages and the addition of a qualifying second paragraph to respondent's damage instruction No. 5 which incorporated the mitigation theory added further confusion and misdirection to the case. Mitigation of damages as a generally recognized principle of law is also known as the rule of avoidable consequences. The rule requires that one damaged through alleged breach by another of some legal duty or obligation make reasonable efforts to minimize the resulting damage. *Wolf v. Missouri State Training School For Boys*, 517 S.W.2d 138 (Mo. banc 1974); 22 Am.Jur.2d Damages § 33. The burden of proof of mitigation of damages is on the defendant who must show the opportunity the injured party had to mitigate and the reasonable prospective consequences. *Curlee v. Donaldson*, 233 S.W.2d 746, 757 (Mo.App.1950).

In this case, the concept of mitigation of damages was inapplicable regardless of which theory of the agreement were adopted. If the agreement were found, as respondent contended, to be a promise for future payment of a settlement in disposition of the pending lawsuit, performance contemplated delivery to appellants of the remaining stock at the time payment was made and, upon appellants' failure to pay, respondent was entitled to sue on the agreement and hold the stock for delivery as provided in the contract. Sale by respondent of the stock after maturity of appellants' debt would, in fact, have been in contravention of the agreement provisions on which respondent relied and would have been inconsistent with respondent's theory that the agreement was one for a litigation settlement payment.

If, in the alternative, the agreement be construed, as claimed by appellants, one for the future sale of stock, respondent's damage is calculated on market value as of the date of breach, and assessment of market value by actual sale or by comparative data automatically balances values to afford appellants the benefit of that value otherwise cognizable in mitigation. In fact, the nature of proof of damages required of one claiming as seller under a defaulted agreement to purchase excludes any issue of mitigation of damages.

Instruction No. 4 as given actually was an inverted submission of a plaintiff's measure of damage instruction in a breach of sale contract case and informed the jury that respondent was entitled to recover as damages the difference between market value and the contract price for the stock. That instruction and the companion reference in the second paragraph of Instruction No. 5 were erroneous because inconsistent with respondent's theory of recovery and, even if applicable to the alternative theory of an agreement for a sale, incorrectly charged appellants with the burden of proving respondent's damage under the mistaken guise of mitigation.

Respondent argues that infirmities in the instructions claimed by appellants to have constituted error as above delineated do not require reversal because, when considered together and in conjunction with the jury verdict, the result demonstrates that no prejudice occurred. Respondent also contends that appellants may not complain of Instruction No. 5 because the second paragraph was included at their request, and they offered no explanatory or modifying instruction.

Cases cited by respondent, while supporting the general propositions advanced, are

not applicable to the instruction errors here at issue. The verdict returned did correspond to the sum named in the December 1967 agreement but the language of Instruction No. 5 which authorized an award for damages "as a direct result of the contract" and a failure to submit any dispute as to contract obligations under Instruction No. 2 left little other option if any verdict for respondent were to be rendered.

 Instructions are prejudicially erroneous where inconsistent theories of recovery are intermingled. *Ervin v. Coleman*, 454 S.W.2d 289, 292 (Mo.App.1970). Instructions which furnish wholly inadequate, confusing and misleading guidelines are prejudicially erroneous. *Tile-Craft Products Co. v. Colonial Properties, Inc.*, 449 S.W.2d 653, 656 (Mo.1970). The language of an instruction should be so plain that no doubt can arise as to its meaning. *Black v. Kansas City Southern Railway Co.*, 436 S.W.2d 19, 27 (Mo. banc 1968).

 The record in this case admits of no doubt that Instructions No. 4 and No. 5 were confusing and misleading in that they improperly informed the jury as to damages recoverable by respondent and falsely injected an issue of mitigation of damages. The comingling of and failure to distinguish between the conflicting interpretations of appellants' obligations assumed under the agreement was inherently prejudicial and require that the judgment be reversed and the case be remanded for retrial.

 Failure of respondent's verdict directing instruction to correctly inform the jury as to the elements necessary to return a verdict for respondent was an issue which has been addressed, not because ultimately determinative of this appeal but important on retrial. So too is the problem presented when an instruction, here Instruction No. 5, is a composite of paragraphs offered by opposing parties. The defect in such an instruction is demonstrated by respondent's argument that appellants are in no position to complain of error in the first paragraph of the instruction because they contributed the second paragraph. By its order of May 20, 1964, the Supreme Court of Missouri provided the initial mandate for use of MAI instructions. The portions of that order, and particularly paragraph (d) of Rule 70.-02, contemplate that instructions shall be attributed to the party tendering the instruction or, to the court if prepared at the court's direction. No other alternatives are available. For purposes of this case, Instruction No. 5 is regarded as having been prepared at the court's direction and respondent's contention that appellants waived objection by contributing the second paragraph is rejected. The practice of marking an instruction as submitted in part by plaintiff and in part by defendant should not be followed.

In retrial of this case, proper instructions as to respondent's damages and any affirmative defenses which may be offered by appellants can only be framed in the context of respondent's choice of alternative submissions. By reason of such contingencies, this opinion should not be regarded as requiring any particular instruction nor limiting the scope of instructions which the evidence and issues may require.

The judgment is reversed and the cause is remanded for retrial on all issues.

All concur.