Christo A. WELTSCHEFF, M. D.,
Plaintiff–Respondent,

v.

MEDICAL CENTER OF INDEPENDENCE, INC., a general not–for–profit corporation a/k/a Medical Center of Independence, Defendant–Appellant.

No. WD 30554.

Missouri Court of Appeals,
Western District.

Sept. 2, 1980.

Kent Snapp, Richard L. Martin, Johnson, Lucas, Bush, Snapp & Burgess, Kansas City, for defendant–appellant.

Henry L. Graf, Kansas City, for plaintiff–respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

Christo Weltscheff, a medical doctor, filed suit against the Medical Center of Independence in two counts. After a separate trial on the first count, an appeal to this court resulted in the affirmance of the judgment in favor of Weltscheff. *Weltscheff v. Medical Center of Independence*, 597 S.W.2d 871 (Mo.App.1980). This appeal is from a judgment on Count II finding that Weltscheff was entitled to recover certain fees from MCI, and ordering MCI to account for such fees.

On this appeal MCI contends its motion to dismiss the petition and its after–trial motion for judgment should have been sustained and that the court erred in instructing the jury. Reversed and remanded.

The second count of the petition adopted the first count which simply alleged that Weltscheff and MCI entered into an agreement, a copy of which was attached to the petition, and that Weltscheff had performed all of his duties under such agreement, but that MCI had failed to pay him the agreed wages. The second count further alleged that MCI had been billing and collecting from patients treated in the emergency room for the medical fees of Weltscheff and that Weltscheff had demanded that MCI make an accounting to him showing the sums collected, but MCI had refused to do so. That count further alleged Weltscheff had demanded the money collected from the patients be paid to him, but this had been refused. The prayer was that MCI be required to account to Weltscheff for the money collected from patients treated in the emergency room and for judgment in the amount the court would find on such accounting.

In a conference with the court immediately prior to the commencement of trial, both counsel discussed the issues that would be tried by the jury. The court stated that it found the contract to be ambiguous and thus there was a basis for a jury determination concerning the construction of the contract and that evidence should be received pertaining to its proper construction. The court said it considered Count II to be for money had and received, and for an accounting. On this basis the court said the jury would determine whether or not Weltscheff was entitled to recover fees collected by MCI, and, if so, whether or not MCI would be entitled to a credit for money previously paid to Weltscheff on an hourly basis. The court said if the jury found that Weltscheff is entitled tᴏ recover it would later be for the court to determine whether or not an accounting should be made.

The contract in question stated that the purpose of the agreement was "to make prompt emergency treatment available to the community." The hospital agreed to make "available for use of Dr. C. A. Weltscheff" space for emergency treatment, an office, and a sleeping room. The hospital also agreed to provide all necessary and non–expendable equipment, drugs, supplies, furniture and fixtures for operation of the Emergency Department; to repair and maintain equipment; and to provide utilities, laundry and janitor service, painting and decorating. Nurses, other physicians, and non–physician assistance would be provided by the hospital as needed. Other pertinent provisions of the contract include:

7. Dr. C. A. Weltscheff agrees during the term of this agreement, to give prompt emergency treatment to persons who come or are brought to the hospital in need of emergency treatment, irrespective of ability to pay. Emergency treatment is defined in Section 1.

&ast; &ast; &ast; &ast; &ast; &ast;

All patients brought to the Emergency Room Department will be asked if they want their private physician to see them or Emergency Room doctor to see them, and their wish will be followed. If the patient is seen by Emergency Room doctor, then the patient will be referred accordingly to the nature of illness to a staff member specialist or a general practitioner. Dr. Weltscheff will see any patient for evaluation and treatment by request of any staff member but it should be understood that in such case the attending physician has the legal responsibility for the care of this patient. Dr. Weltscheff is working as an independent physician.

8. Patients without a private physician after being examined by the doctor in the Emergency Room shall be referred for follow–up care to the staff members in their respective specialties. Dr. Weltscheff's private patient services will be billed by himself.

The Emergency Room physicians, including Dr. Weltscheff, should use a fee schedule confirmed (sic) generally with the customary charges comparable in the locality. The basic fee schedule should be approved by the Administration and the Executive Committee of the Medical Staff.

Dr. Weltscheff shall receive a basic fee of $15.00 per hour. Two weeks of paid vacation at the current hourly rate of pay. It is understood that it is necessary that other doctors be employed for the Emergency Department service for total coverage. Dr. Weltscheff will volunteer to put forth his best effort to recruit such physicians who will be paid by agreement between the individual physician and the hospital.

In case Dr. Weltscheff is unable to carry on his duties, he may send a substitute physician who is qualified to treat medical and surgical conditions commonly seen in the Emergency Room. The substitute physician will be compensated by the Hospital at the prevailing salary schedule.

The Hospital will provide clinical services to assist Dr. Weltscheff and in billing and completing third party claim forms and provide routine collection and accounting service.

The guaranteed minimum annual fees will be negotiated with administration of the hospital annually.

9. In addition to the fees charged by the Emergency Room doctor for professional services, the patient may be charged by the hospital for the use of the facilities and supplies of the Emergency Room depending on their demand and need.

10. The Emergency Room doctor shall maintain adequate medical records for patients treated in the Emergency Room on a current basis on a form provided by the hospital.

11. In performing under this agreement, Dr. Weltscheff shall at all times be acting and performing as an independent contractor. The hospital or the medical staff shall neither have nor exercise any control or direction over any other member of the medical staff. The sole interest of

the hospital is to assure that medical service in the Emergency Room shall be performed in a competent, efficient, and satisfactory manner. The hospital reserves the right to bring to the attention of Dr. Weltscheff any reported incidence of complaints reflecting on the possibility of improper patient care.

12. Dr. Weltscheff may maintain an office for the practice of medicine outside the hospital, however, his primary interest is to cover the Emergency Room Department, minimum 40 to 50 hours weekly. Dr. Weltscheff is permitted to see his own private patients with emergency conditions in the Emergency Room while he is on duty.

13. Dr. Weltscheff is required to carry malpractice insurance with limits to $100,000.00 to $300,000.00.

14. Dr. Weltscheff is to be engaged in practicing medicine in accordance with the ethical and professional standards of the AMA, the Missouri State Medical Association and the Joint Commission on Accreditation of Hospitals.

15. Disagreement (sic) may be amended at any time by mutual agreement of the parties involved.

The trial proceeded as an ordinary jury trial. After the voir dire and the strikes of the jury panel were made, the court gave MAI 2.01. Counsel made their opening statements and the introduction of evidence followed. The evidence was directed largely, if not entirely, at the question of whether or not the physician fees entered on the patient's record by Weltscheff and later collected by the hospital, belonged to Weltscheff or whether the entire compensation to be received by Weltscheff was the $15.00 per hour mentioned in the contract.[1]

Weltscheff's contention that he was entitled to the physician fees collected by MCI was summed up in the following answer given by him during his testimony before the jury:

The basic fee was paid for the services that I did, establishing, organizing, conducting the emergency room, following the employment health, following in conjunction and coordination with the infectious committee department that the nurses' health—in other words, they were routine monthly or bi-weekly examinations, cultures, nose, ears and throat done. Those are the things I did. That is why I was paid the basic fee, sir, and I was called director of the emergency room. That is what I was paid the basic fee (Para. 8) for. That is why it was accepted. If I see patients I will charge them and that is the way we did it. That is why it's written down there. They will provide the billing (Para. 8). If I was not supposed to charge those patients for, why the hospital should agree with me to establishing and collecting system or a billing system or accounting system—

MCI's position was simply that the contract did not specifically say that Weltscheff was to receive any money in addition to the $15.00 per hour plus vacation pay, and, therefore, he was not entitled to any additional payment. There was no dispute that all sums due Weltscheff under the $15.00 per hour and vacation pay provisions had been paid. The sole dispute was whether or not the physician fees which Weltscheff wrote on each emergency room patient's slip and which was in turn collected by the hospital belonged to him or the hospital. At the conclusion of the evidence both parties argued their position on the question of whether or not the physician fees collected by the hospital belonged to Weltscheff. The court gave a burden of proof instruction, without notation of whether or not it was from MAI, and a verdict director. The verdict director was as follows:

You are hereby requested to return answers to the following questions:

1. Is plaintiff entitled to recover from defendant for the amount of physician fees it has collected from patients for medical professional services rendered by plaintiff to the patients while in the emergency room at the hospital?

---

1. The $15.00 was raised to $16.00 per hour by unilateral action of MCI and a letter advising Weltscheff of this was sent to him. The letter stated this was an amendment to the contract.

2. If your answer to Number 1 is yes, is defendant entitled to deduct the money paid plaintiff by defendant under the contract?

The court also gave MAI 2.02 on the non–assumption of facts and an instruction with the forms of verdict.

The jury returned a verdict in which it answered the first question in the verdict director as "yes," finding that the physician fees should be paid to Weltscheff, and answered question No. 2 "no," finding that Weltscheff did not have to deduct the $15.00 per hour already received by him. The court in its judgment recited the jury verdict and found that Weltscheff was entitled to recover the physician fees collected from patients in the emergency room without any deduction for the hourly amount paid to him. The court further ordered MCI to account to Weltscheff for all physician fees collected from emergency room patients. The court stayed the accounting and designated the judgment as separate for purposes of appeal within Rule 81.06. This appeal followed.

■ MCI contends that its motions before and after trial asking for dismissal or judgment should have been sustained because the contract is not ambiguous and the contract does not provide for any payment to Weltscheff in addition to the $15.00 per hour. This court recently considered the question of ambiguous contracts in *Busch & Latta Painting v. State Highway Com'n,* 597 S.W.2d 189 (Mo.App.1980). At p. 197[1] this court stated the rule to be that whether or not a contract is ambiguous is a question of law for the court. Thus, the first question to be determined is the correctness of the finding that the agreement is ambiguous.

■ The answer may be found in several provisions in the contract. Paragraph 7 provides that Weltscheff will see all persons who seek treatment in the emergency room regardless of their ability to pay. It naturally occurs that if Weltscheff had no interest in the physician fee there would be no concern on his part in whether or not a patient could pay. Thus, this provision would be unnecessary if Weltscheff was to receive as his only compensation the $15.00 per hour basic fee.

Next, Weltscheff was given the right to see his own patients in the emergency room, but was responsible for his own billing. The hospital had no interest in those fees charged by Weltscheff and no further mention of such fees was made.

The hospital agreed to assist Weltscheff in billing and completing insurance forms and to provide routine collection and accounting service. Since the contract had already provided Weltscheff was responsible for billing his own patients, this provision must apply to some other fees in which Weltscheff had an interest. Those fees would have to come from patients who were not Weltscheff's private patients. The inclusion of this duty on the part of the hospital would indicate there was some money that belonged to Weltscheff which the hospital was going to assist in collecting. This would also indicate the hospital would keep track of those fees and furnish some record to Weltscheff. Further, there would be no point in assisting Weltscheff with the completion of insurance forms for fees in which he had no interest.

By Paragraph 9, the hospital acknowledged that the emergency room doctor would charge a fee for his professional services. This would seem to indicate this charge was made by the physician for his own use and the hospital would make a separate charge for its facilities and supplies.

The above provisions in the agreement point out the existence of ambiguity in the contract. The court properly held the contract to be ambiguous. The court was also correct in holding that issues of fact for the jury to resolve had been raised on the ambiguity question. *Busch & Latta,* p. 198.

■ The petition, although far from a model, stated a cause of action for the balance due on the contract. Weltscheff did not ascertain the amount he was claiming by discovery, but in view of the issue

submitted to the jury, no harm resulted. Of course, a proper submission of Weltscheff's cause would be to submit the question of the construction of the contract along with the amount claimed to be due. Apparently counsel took the position that an accounting was required to determine the amount of physician fees collected by the hospital. However, there is nothing to indicate that this information would not be available by discovery. The court was correct in overruling the motions based on the contention the contract did not explicitly require any payment to Weltscheff beyond the hourly amount.

■■■ The decisive question on this appeal is the giving of the verdict directing instruction. At the outset it should be noted that the court was given little if any help in determining the legal theory Weltscheff was pursuing. Counsel stated his theory was an action for accounting; however, an action for accounting is an action in equity and the petition must state a cause of action based upon some known and established equitable ground. *Palmer v. Marshall*, 24 S.W.2d 229, 234 [3, 4] (Mo.App. 1930). The relief given in an action for an accounting is an accounting and a judgment for the balance found due on taking the accounting. *Dahlberg v. Fisse*, 328 Mo. 213, 40 S.W.2d 606, 609 [4, 5] (Mo.1931).

■■■ The court stated the cause of action which would be submitted to the jury would be based on money had and received and if the jury found Weltscheff was entitled to recover an additional sum, then the court would order an accounting. In *Fulton National Bank v. Callaway Memorial Hosp.*, 465 S.W.2d 549, 553 [6, 7] (Mo.1971) the court stated that a suit for money had and received is not founded upon an express contract but upon an implied contract created by law. Such action is an action at law. *Eichenberg v. Magidson's Estate*, 170 S.W.2d 105, 108 [2, 3] (Mo.App.1943).

It is apparent the court was confused when it stated that Weltscheff's claim would be tried as an action for money had and received and if the jury found he was entitled to recover additional sums an accounting would be ordered. The court co–mingled an action at law, money had and received, with an action in equity, accounting, when neither action was applicable in this case. Weltscheff's claim could not be an action for money had and received when it was plainly founded upon an express agreement. It cannot be an action for an accounting when it did not state any factual grounds showing an equitable ground for an accounting or an inadequate remedy at law. Nor was there anything in the evidence which would result in an amendment of the petition to show a cause of action for accounting. No mention or request for finding the petition had been amended was made.

Weltscheff contends the court tried this case as an action for an accounting and the jury was only an advisory jury as is permitted in equitable suits. Rule 73.01. However, the record is clear the court did not try this as an equitable suit for accounting with an advisory jury. As pointed out above, the court clearly stated that it was trying the case as an action for money had and received with an accounting to follow if the jury found Weltscheff was due an additional sum. In addition, the court gave the instructions, albeit the verdict director was improper, as it would have been in the usual jury case. From the record there is no doubt the court considered that it was trying an action at law for the construction of the contract.

This case is further confused by the fact that although the court stated it was trying the case as an action for money had and received, the only question actually tried was whether or not under a proper construction of the contract Weltscheff was entitled to additional sums. It is apparent from the verdict directing instruction this was the only question the jury was to decide and from the evidence adduced and the opening and closing statements of counsel it is clear this was the question that both parties were trying.

MCI contends the verdict directing instruction was erroneous because it constituted a roving commission to the jury, did

not follow MAI, and failed to instruct the jury as to the applicable rules of law. In *Braun v. Lorenz*, 585 S.W.2d 102, 107 [2, 3] (Mo.App.1979) this court held that when a dispute exists as to the terms of the agreement on which a claimant is relying for recovery, that issue must be hypothesized in the verdict directing instruction. This court stated that MAI 26.06 was the proper instruction by which to submit this issue. In *Busch & Latta* this court stated at p. 200 [6]:

> In any case where an issue of ambiguity exists, the terms of the contract are in dispute; and MAI 26.06 must be the starting point for the instruction of the jury.

■ MAI 26.06 is entitled "verdict directing–bilateral contract–terms of agreement in issue." The cause of action brought by Weltscheff was based on a bilateral agreement and the terms thereof were in dispute. Under *Braun* and *Busch & Latta* it is clear the verdict director given by the court was erroneous and that MAI 26.06 should have been given. Of course, when an MAI instruction is applicable such instruction must be given. Rule 70.02(b). There can be no doubt as to the prejudicial effect of the giving of the verdict director given in this case. Such instruction was a complete roving commission to the jury to find that additional sums were due Weltscheff for any reason it could think of without being required to find certain facts.

Because of the error in giving the verdict directing instruction the judgment is reversed and this cause is remanded for further proceedings.

All concur.