Kenneth W. SHEARIN, Respondent,

v.

FLETCHER/MAYO/ASSOCIATES,
INC., Appellant.

No. WD 32978.

Missouri Court of Appeals,
Western District.

Nov. 2, 1982.

As Modified Feb. 1, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Feb. 1, 1983.

Application to Transfer Denied
March 29, 1983.

R. Dan Boulware, St. Joseph, for appellant.

Kranitz & Kranitz, P.C., St. Joseph, for respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

This appeal is based upon a jury verdict for plaintiff-respondent Shearin on his action for breach of an employment contract. Shearin was recruited by appellant Fletcher/Mayo/Associates, Inc. (Fletcher/Mayo), to be Vice President and Creative Marketing Director of their advertising agency.

After several meetings in Missouri between Shearin and its executives, Fletcher/Mayo wrote to Shearin offering him a job at $37,500 per year and to pay his and his family's moving expenses from their home in Ohio to St. Joseph, Missouri, Fletcher/Mayo's home office. Subsequent-

ly, an employment contract, prepared by and signed by Fletcher/Mayo was sent to Shearin. Having such a contract was Shearin's idea since Fletcher/Mayo did not use these agreements for anyone working for them. The contract sent to Shearin had a term of employment of three years and a termination clause that read:

"[e]ither party can terminate this agreement *at any time* there is justifiable cause to assume the other party is not performing according to the best interest of all parties." (emphasis added).

During the pre-contract discussion Shearin told the company he wanted some written agreement to show his wife he would be employed in the same place for at least three years.

Shearin then called Fletcher/Mayo and said he wanted the contract changed to provide for three years work for him. The company did not agree. Shearin some two weeks later after having been moved to St. Joseph by Fletcher/Mayo commenced work. At some time prior to or on his first day of work he returned the employment contract, signed by him, but changed in that the termination clause had been altered by deleting the words "at any time" and adding "... at the end of the three year contract if ...", which in effect gave Shearin a three year non-terminable contract of employment. Shearin initialed the change—the company never initialed the change nor made any statement agreeing to the alteration. The altered contract, signed by both parties was put in Shearin's employment file by Fletcher/Mayo. Ten months later Shearin was terminated because he was not working well with other departments and dissatisfaction with his performance by management.

The jury awarded Shearin $57,500 in damages. The pivotal issues in this case are: 1) Was there a contract of employment, and, if so, 2) Was there a non-termination provision in that agreement?

Fletcher/Mayo on appeal contends as a matter of law there was no written contract, insufficiency of the evidence to support a submission that the contract was modified to Shearin's position, and if so, was it breached, and the instructions to the jury.

Fletcher/Mayo's first point contends that the court erred in refusing to direct a verdict for them at trial, in submitting the case to the jury, and in failing to enter judgment notwithstanding the verdict after trial, because there was no written employment agreement as a matter of law. This point is ruled against it.

The jury could have reasonably found that some form of employment agreement was in effect, with a termination clause. The evidence as to the existence of a contract or agreement was presented to the jury as a question of fact and no objection was raised at trial by defendant to evidence tending to establish an oral agreement.

██ As Shearin correctly notes, in determining whether a verdict is responsive this court must consider the evidence in the light most favorable to the party who prevailed at trial, and give him the benefit of all reasonable inferences drawn from the evidence. *Welch v. Hyatt,* 578 S.W.2d 905, 912 (Mo.1979) (en banc); *Zabol v. Lasky,* 555 S.W.2d 299 (Mo.1977) (en banc). Thus a verdict rendered on facts, which falls within the province of the jury to decide, is conclusive on appeal.

Fletcher/Mayo's second basic point (several points combined here for the sake of brevity) is the trial court erred in failing to direct a verdict at trial for appellant, in submitting the case to the jury, and in failing to enter judgment n.o.v. after trial, because as a matter of law the discharge of Shearin did not constitute a breach of the written employment agreement, because there was insufficient evidence of an agreement, and insufficient evidence of modification and of a breach. This point *is ruled* against Fletcher/Mayo. A further issue was presented as to whether an agreement existed between the two parties and whether there was a termination provision. Defendant's motions for directed verdict refer only to the fact there was never a contract between the parties—to now allow defend-

ant to claim plaintiff didn't make a case because he didn't prove a *written* contract, would allow defendant to raise a point on appeal not presented to the trial court.

■ It seems clear that the jury could have found a valid employment agreement to exist in light of the evidence that Shearin returned the employment contract to Fletcher/Mayo with the above-mentioned modifications, and commenced working for the company, moving his family from Ohio to St. Joseph, Missouri. There is some dispute over *when* and *how* the contract was returned, but the fact is that it was returned and Fletcher/Mayo was aware of the modification yet kept Shearin on as an employee retaining the altered contract on file. The contract being the only written manifestation of any agreement, combined with the fact that Shearin moved his family to St. Joseph and worked for the company for approximately ten months, the jury could find that Shearin had relied on his detriment on the existence of a valid contract and that Fletcher/Mayo accepted the benefits of the contract and was estopped from denying its existence. The Supreme Court of Missouri has held that: "[o]ne who accepts the benefits of a contract is estopped to disaffirm its burdens." *ACF Industries, Inc. v. Industrial Commission,* 320 S.W.2d 484, 491˙ (Mo.1959) (en banc).[1] Fletcher/Mayo cannot have it both ways, claiming there is no written employment contract, yet reaping the benefits of Shearin's work for ten months and adhering to those terms in the original written contract which suit its purposes and ignoring those terms which do not. Respondent cites *Dubail v. Medical West Bldg. Corp.,* 372 S.W.2d 128, 132 (Mo.1963), which stated:

> As a general rule, by accepting benefits a person may be estopped from questioning the existence, validity, and effect of a contract. A party will not be allowed to assume the inconsistent position of affirming a contract in part by accepting or claiming its benefits, and disaffirming it in part by repudiating or avoiding its obligations, or burdens.

The jury also had sufficient evidence presented of an agreement between the parties which was breached by Fletcher/Mayo's dismissal of the employee. Reasonable minds could have differed on the existence of an agreement, the trial court was correct in not directing a verdict or judgment n.o.v. for the defendant.

■ Fletcher/Mayo's point that the trial court erred in giving Instruction No. 4, the respondent's verdict director, because the instruction failed to properly instruct the jury, by failing to hypothesize or set forth the issue of termination of employment in the employment contract is well taken. The issue of whether the company could terminate Shearin within three years was the primary issue in the case, yet was not submitted via instructions to the jury.

Shearin's verdict director, Instruction No. 4, was patterned after MAI 26.06 and read as follows:

> Your verdict must be for plaintiff if you believe
>
> First, plaintiff and defendant *entered into an agreement* whereby plaintiff agreed to become an employee as vice-president of defendant and to perform the duties of Creative/Marketing Director *for an initial employment term of three years* at an annual salary of $37,500.00, beginning 16 April 1979; and defendant agreed to employ plaintiff according to those terms; and
>
> Second, plaintiff performed his agreement; and

---

1. The Supreme Court of Missouri has also noted three elements required for a finding of estoppel: First, an admission, statement or *act inconsistent with a claim afterwards asserted and sued upon;* second, *action by the other party on the faith of such* admission, statement or *act;* and third, *injury* to such other party *resulting from allowing the first party to contradict or repudiate such admission, statement or* act. In the instant case the inconsistent act was permitting Shearin to commence work inspite of his modification of the contract. Shearin took action by staying with the company contending that this was on the faith that the company had accepted his modified contract by putting him to work; and Shearin was injured when the company repudiated the contract. See *Peerless Supply Co. v. Industrial Plumbing & Heating Co.,* 460 S.W.2d 651, 666 (Mo.1970).

Third, *defendant failed to perform its agreement;* and

Fourth, plaintiff was thereby damaged. (emphasis added).

The above terms were not necessarily disputed as they were offered by Fletcher/Mayo originally in the Employment Contract mailed to respondent. The problem is that the instruction at no point addresses the essential termination issue. Whether or not Fletcher/Mayo could terminate Shearin within the contemplated three-year employment term, based upon a modification of the original contract provision on termination was left out of the instruction. An "employment term of three years" cannot be equated or be synonymous with "no termination for three years." The existence of a non-termination clause was at the heart of this case. The jury could have thus found "an agreement" to exist without deliberating on the termination provision.

In *Braun v. Lorenz,* 585 S.W.2d 102, 106–07 (Mo.App.1979), this court discussed an MAI 26.06 instruction in a contract dispute case and stated:

> Despite the disputed interpretation of the agreement, respondent was not obliged to accede to appellant's construction of the paragraph 3 language and was entitled to submit the case on that theory which afforded a superior prospect for recovery. In any submission selection, however, *the instruction must necessarily have hypothesized and have required the jury to find that interpretation of the agreement advanced by respondent.* (emphasis added).

In the instant case, respondent's main point of contention was the acceptance by Fletcher/Mayo of the contract as modified with the non-termination provision. Thus, the instructions should have set out and hypothesized that interpretation of the agreement advanced by Shearin, not that of Fletcher/Mayo. In *Braun,* this court held that plaintiff's verdict director patterned after MAI 26.02 was fatally defective.

> Respondent's verdict director in paragraph two assumed that construction of the agreement supported respondent's version of a contract for payment of mon-

ey and required only a finding by the jury on non-payment, a fact not contested. *The essential disputed issue of what appellant had agreed,* to pay settlement or buy stock, *was not posed and the jury was not permitted to decide the important question on which the balance of the case turned.* 585 S.W.2d 102, (emphasis added).

The term of the contract dealing with termination being very much at issue in the instant case, and for failure to instruct the jury on the same is fatal to both verdict and judgment.

Fletcher/Mayo's additional attacks on the instructions need not be dealt with in light of the defective verdict director.

Because of instruction error, the judgment is reversed and the cause is remanded for a new trial.