John B. MILLER, Jr., Appellant,

v.

O. D. WAGONER et ux., Appellees.

No. 10944.

Court of Civil Appeals of Texas.

Austin.

March 28, 1962.

McKay & Avery, Charlie D. Dye, Austin, for appellant.

Frank D. Kerbow, Austin, for appellees.

RICHARDS, Justice.

O. D. Wagoner and wife, appellees, brought suit against John B. Miller, Jr., appellant, to recover damages for personal injuries sustained by Mrs. Wagoner and damage to the Wagoner automobile resulting from a rear-end collision between appellant's and appellees' automobiles which occurred in Austin, Texas, on December 28,

1958. Appellee Wagoner travelling south on a service road stopped his car at an intersection for a stop sign before entering West First Street, remaining at the stop sign to permit a car to pass which was travelling west on West First Street. While he was waiting for the car to pass appellant, travelling south on the service road in the rear of Wagoner's car, struck his car in the rear, knocking it several feet forward, and as a result of the collision Mrs. Wagoner, who was sitting in the front seat of the car, claimed a whiplash neck injury.

The case was tried to a jury which rendered a verdict for appellee O. D. Wagoner for $72.64 for damages to the automobile and $8,000.00 for damages for injuries suffered by Mrs. Margarette Wagoner. Judgment having been rendered in accordance with the verdict of the jury and after his motion for new trial had been overruled, appellant perfected this appeal.

In answer to the special issues submitted the jury found (1) that just prior to the collision appellant failed to keep a proper lookout, (2) which failure was a proximate cause of the collision; (3) that appellant failed to bring his car to a standstill, (4) which failure was negligence, and (5) which negligence was a proximate cause of the collision and any resulting injuries to Mrs. Wagoner. The jury also found (6) that appellant was driving his car too close to the Wagoner car at the time and on the occasion in question, (7) which was negligence, and (8) a proximate cause of the collision and any resulting injuries to Mrs. Wagoner, and (9) that appellant failed to keep a proper lookout. In addition the jury found (11) that appellee Wagoner after bringing his automobile to a stop at the intersection did not *start* moving his vehicle in a forward direction and (19) that the collision was not an unavoidable accident. Appellant did not object to any of the issues.

Appellant predicates this appeal upon six points of error, Points 1 and 2 being that the jury's answer to special issues 9 and 10 are without any support in the evidence and against the uncontradicted testimony or at least were so contrary to the overwhelming weight of the evidence as to have been entirely wrong.

The jury found in answer to special issue No. 9 that just prior to the collision O. D. Wagoner did not fail to keep a proper lookout and having so found were not required to answer special issue No. 10 as to whether such failure to keep a proper lookout was a proximate cause of the collision.

The rule of law governing proper lookout in rear-end collision cases is stated in Renshaw v. Countess, Tex.Civ.App., 289 S.W.2d 621, 624, no writ history, as follows:

> "We think it is the law that a motorist following another vehicle must drive at a reasonable speed, keep back a reasonable distance, and keep his vehicle under reasonable control so as to provide for the contingency of a car in front suddenly stopping; that he must maintain a proper lookout for the car in front, so that he can stop without a collision or can turn out and pass the vehicle in front without getting in the way of traffic approaching from the opposite direction. A question of fact as to the existence of negligence is usually presented when one motor vehicle overtakes and strikes one in front of it, going in the same direction. The collision itself is some evidence of negligence on the part of the driver who strikes a preceding car from the rear. * * *

> "We think that a prudent driver may stop at a street intersection and wait for the intersection to clear without anticipating that his vehicle will be struck by one approaching from the rear."

In accord, Grossman v. Tiner, Tex.Civ. App., 347 S.W.2d 627, error ref., N.R.E.;

Neill v. Baltazar, Tex.Civ.App., 345 S.W. 2d 454, error ref., N.R.E.; Hoey v. Solt, Tex.Civ.App., 236 S.W.2d 244, no writ history.

■ In passing upon the question of whether there is evidence to support the findings of the jury upon appeal, this Court may only consider that evidence which viewed in its most favorable light supports the jury's findings and must disregard all evidence which would lead to a contrary result. Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359, 363. Both negligence and proximate cause may be inferred from the circumstances and it is not necessary to prove these elements by direct and positive evidence. Houston, E. & W. T. Ry. Co. v. Boone, 105 Tex. 188, 146 S.W. 533; Renshaw v. Countess, supra.

Wagoner testified that he stopped his car for a stop sign before entering West First Street and that he remained at the stop sign to permit a car to pass which was travelling west on West First Street; that prior to coming to a stop he had seen some reflections in his rear view mirror presumably coming from another car which was following; that he did not see the car but only the reflection of the lights; that he did not observe the car as it came up behind him because he assumed that since there was a stop sign, the car in the rear would also stop and he was watching the traffic ahead of him; that while his car was in gear its rear bumper was hit violently by the car driven by appellant and his car was knocked forward about 6 or 8 feet, at which time he applied his brakes and stopped the car. After the collision he got out of his car as did appellant, who came up to him and said: "I am sorry, fellow, it was my fault, I was looking the other way."

Appellant, called as an adverse witness, was asked if he recalled having any conversation with Wagoner immediately after the collision and he stated that he did have some conversation with Mr. Wagoner and that they looked at the bumpers. When asked if he told Mr. Wagoner that he had not seen him before he hit him, he answered that he did not recall that he made that statement nor did he recall telling him that he was sorry that he did not see him because he was looking the other way, but when asked if he denied that he made that statement, appellant stated that he just did not recall it.

Appellant testifying in his own behalf, when asked if he and Mr. Wagoner had exchanged any words, answered as follows:

"A There might have been a few words said. However, it was two years ago; I don't recall what conversation might have taken place.

"Q I will as you if you recall making a statement to Mr. Wagoner, in substance: 'I am sorry. I wasn't looking. I didn't see. It was all my fault.' Do you recall making any such statement as that?

"A No, sir, I don't recall making any statement of that sort.

"Q Is it your testimony that you didn't make such a statement?

"A It would be my testimony that it would be very foolish for me to make a statement to that effect; so I would say I did not make the statement."

■ From the record as a whole, there is ample and sufficient evidence to support the jury's finding that O. D. Wagoner did not fail to keep a proper lookout prior to the collision and that such finding is not against the overwhelming weight and preponderance of the evidence as to have been entirely wrong. We therefore overrule appellant's points of error 1 and 2.

For his third point of error appellant urges that the jury's answer to special issue No. 11 is without any support in the evidence and against the uncontradicted testimony or at least is so contrary to the

overwhelming weight of the evidence as to be entirely wrong.

Special Issue No. 11 is as follows:

"Do you find from a preponderance of the evidence that the plaintiff O. D. Wagoner, after bringing his 1958 Plymouth automobile to a stop on the occasion and at the intersection in question, started moving his automobile in a forward direction again?"

to which the jury answered "No," and as a result were not required to answer the following special issues:

"Special Issue No. 12: Do you find from a preponderance of the evidence that on the occasion and at the intersection in question, the plaintiff, O. D. Wagoner, after having brought his automobile to a stop, and after having started it moving in a forward direction again, if you have so found, he suddenly stopped his automobile?

"Special Issue No. 13: Do you find from a preponderance of the evidence that the action of the plaintiff, O. D. Wagoner, in suddenly stopping his automobile, as inquired about in the foregoing special issue, if you have so found, was negligence, as that term is herein defined?

"Special Issue No. 14: Do you find from a preponderance of the evidence that such negligence, if any you have found, was a proximate cause of the collision in question?"

On direct examination Mr. Wagoner testified that when he came to the stop sign he stopped his car completely with his foot on the brake and that he put the car in low gear to proceed, but had not proceeded when he was hit by appellant's car. On cross-examination he stated that he put his car in low gear in readiness to go forward and saw a car coming from his left and applied his brakes again waiting for the car to proceed past. Also during cross-examination reference was made to Wagoner's testimony in his deposition given prior to the trial in which he stated that after he stopped, he waited momentarily for an oncoming car that was going west and released his brakes and as he moved forward a little he was struck from the rear. The witness was then asked as to which of the preceding statements was correct to which he answered that he came to a complete stop, looked in both directions, made preparations to go forward by putting his car in low gear and released his brake; that he might have moved a foot or two but that he was making preparations to go. .

Appellant testified that when Wagoner approached West First Street he came to a complete stop; that appellant was directly behind and stopped within three or four feet of his vehicle but when Wagoner's car started up, appellant started to take his place when all of a sudden Wagoner just stopped very suddenly and appellant could not stop in time to keep from hitting him.

Appellant contends that in the light of Wagoner's testimony the only answer to special issue No. 11 is that after Wagoner brought his automobile to a stop he started moving it in a forward direction again. While Wagoner testified that he "might have moved a foot or two" after he released his brakes, such statement does not, in our opinion, warrant the conclusion that he "started moving" his automobile forward since the meaning of the words "to start" an automobile while the engine is running necessarily implies the movement of the automobile by positive action such as foot pressure upon the accelerator and not a movement caused by gravity.

Manning v. Block, Tex.Civ.App., 322 S. W.2d 651, 656, error ref., N.R.E., was a rear-end collision case in which Manning's automobile was struck from the rear by a car driven by Block. Manning testified that he kept his foot on the brake until he was preparing to move forward; that he then took his foot off of the brake and moved his clutch preparatory to going forward and while doing this the Block car was

propelled into the rear of his car. In holding that Manning was not negligent in having momentarily released his brake pedal preparatory to moving his car forward, the Court held:

"To do so would require a person to have the same ability to see, observe and react as readily to the circumstances of the road behind him as he is required to do ahead. This is physically impossible to do, and the law has rightly placed the burden on the car operator approaching from the rear, in the event of a collision, to explain his action. Renshaw v. Countess, supra."

■ Here the jury found that Wagoner after bringing his automobile to a stop at the intersection did not "start moving" his car in a forward direction and that appellant was driving his car too close to the Wagoner car at the time of the collision. In our opinion there is ample and sufficient evidence to support these findings. Appellant's point of error No. 3 is overruled.

Appellant's fourth point of error is directed to the action of the Trial Court in permitting appellees to file their first amended petition after the jury had been selected and the trial begun, in which it was alleged for the first time as a ground for recovery that Mrs. Wagoner had sustained "permanent disability resulting in her inability to do work that she did before the accident including the loss of earnings from her sewing for the public. * * *"

In his first supplemental answer to appellees' first amended petition appellant excepted to the above pleading on the grounds of surprise and that the pleading did not come within the leave granted by the Court to meet appellant's special exceptions timely filed, which exception was overruled by the Trial Court. It appears from the record that there was no pre-trial hearing but that the special exceptions raised by appellant to appellees' original petition were heard by the Court on March 27, 1961, the same day that the jury was impaneled and the

trial of the case commenced. After certain of these exceptions had been sustained, appellees with leave of Court filed their first amended original petition containing the additional allegations of damage whereupon appellant filed his first supplemental answer to appellees' first amended petition raising the special exception in question. After the Trial Court had ruled upon the special exceptions, the trial to the jury began.

■ After his special exception to the inclusion of the additional ground of recovery alleged by Mrs. Wagoner upon the ground of surprise had been overruled, appellant's counsel did not ask the Court for a postponement or continuance of the trial upon the ground of surprise, thereby waiving any right to complain of the Trial Court's action in granting leave to appellees to file their first amended petition under the requirements of Rule 63, Texas Rules of Civil Procedure.

However, it is uncontradicted in the record that appellant could not have been "surprised" by Mrs. Wagoner alleging as an additional ground of recovery loss of earnings caused by her inability to do sewing for the public as a result of her injuries.

On cross-examination, Mrs. Wagoner testified as follows:

"Q Now, you testified today to a simple amount of sewing, Mrs. Wagoner, but as I recall when I took your deposition in January of this year, that your testimony was that you had done some part-time sewing here and there, and probably worked a few hours at two or three different places; but are you now saying that you have done sewing during these years that you talked about on a professional basis, and that you were actually engaged in the business of a seamstress?

"A You mean prior to the accident?

"Q Yes, ma'am.

"A Yes, sir; I was a seamstress off and on for years before that.

"Q Well, I believe you stated that you didn't know what you were being paid. Did you keep any kind of records for income tax purposes?

"A Oh, I probably have all my books at home; I don't know.

"Q Well, aren't you seeking damages in this lawsuit for loss of earnings from your business as a seamstress?

"A I think it would be just.

"Q Well, my question to you is, aren't you seeking damages for loss of earnings?

"A Yes.

\*    \*    \*    \*    \*    \*

"Q Well, I want to ask you once again about your statement at the time of the deposition where I asked you about dressmaking, and I asked: 'Since you have been married have you worked anywhere else?' and your answer was, 'Part time.'

"And I asked you next, 'Well, what part-time work did you have?' and you stated, 'Alterations.'

"And I asked you, 'Who did you work for?' and you said, 'Well, I worked a few hours at Acme Cleaners. I worked for Austin Army-Navy Store a short time;' and then you worked for Guthrie Brothers on a part-time basis?

"A Yes.

\*    \*    \*    \*    \*    \*

"Q My question to you is that in this period of years that I was inquiring about, from the time you had been in Austin, when you named those three people that you had worked for, one you said, 'I worked a few hours for Acme Cleaners; I worked for Austin Army-Navy Store a short time, and worked a similar period of time for Guthrie Cleaners'—now, you are not testifying here, are you, that by rea-

son of those brief periods of time, that you have lost a major source of income, because you are not now able to work those short hours somewhere or those brief periods of time for some other employer?

"A. It is because I am not able to work as a full-time dressmaker as I did before the accident. That was just fill-in jobs."

■ It is clear from the testimony elicited from Mrs. Wagoner on cross-examination that appellant had been aware since January 1961, that prior to the collision Mrs. Wagoner had been engaged in the occupation of a seamstress for the public for which she received monetary compensation and was thereby placed upon notice that she might rely upon the loss of such earnings as a basis for the recovery of damages. Since appellant could not have been surprised and also failed to ask the Trial Court for a postponement or continuance of the trial upon such ground, appellant's fourth point of error is overruled.

Appellant's fifth point of error is as follows:

"The error of the Court in refusing to grant a new trial to defendant and in entering judgment against appellant, on the Jury's finding of $8,072.64 damages, such finding and amount of damages being grossly excessive, not sustained by the preponderance of the evidence, said finding of the Jury resulting from bias, passion and prejudice and so against the great weight and preponderance of the evidence as to be manifestly unjust."

Special Issue No. 20 submitted to the jury on the question of damages claimed by Mrs. Wagoner as a result of the collision is as follows:

"What sum of money if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate the plain-

tiffs for such damages, if any, as were directly and proximately caused by the injuries, if any, which were sustained by Mrs. Margarette Wagoner as a direct and proximate result of the collision in question, taking into account such of the following elements which you find are established by a preponderance of the evidence, and none other:

"(a) Such physical pain, if any, as you may find from a preponderance of the evidence Mrs. Margarette Wagoner has sustained from the date of the collision in question to the date of this trial, directly and proximately resulting from the injuries, if any, suffered by her as the direct result of the collision in question.

"(b) Such physical pain, if any, as you may find from a preponderance of the evidence, she will in reasonable probability sustain in the future beyond this date as a direct and proximate result of the collision in question.

"(c) The reasonable cash value of the loss of earnings of Mrs. Margarette Wagoner, if any, as you may find from a preponderance of the evidence has been sustained since the date of the collision in question to the date of this trial as a direct and proximate result of the injuries, if any, suffered by her as a direct result of the collision in question.

"(d) The reasonable present cash value of the loss of capacity to work and earn money, if any, that Mrs. Margarette Wagoner will in reasonable probability sustain in the future beyond the date of this trial, as a direct and proximate result of the injuries, if any, sustained by her as a direct result of the collision in question.

"You are further instructed that in connection with answering this issue, you must exclude from your estimate any compensation for impairment, if any, and physical pain, if any, of Mrs.

Margarette Wagoner, which may have been or will be due solely or partly to ailments, congenigal defects, or physical conditions, if any, which she may have had before the collision in question."

The jury awarded Mrs. Wagoner $8,000.00.

The Court also submitted Special Issue No. 18 as follows:

"Do you find from a preponderance of the evidence that the plaintiff, Mrs. Magarette Wagoner's pain, if any, and disabilities, if any, were not solely caused by her previously existing congenital defects together with her pre-existing fracture of the coccyx?

"Answer 'They were not solely caused,' or, 'They were solely caused.'

"Answer: They were not solely caused.

"By the term 'sole cause,' as used in Special Issue No. 18, is meant the only cause. There can be but one sole cause of an event."

In his Motion for New Trial appellant asserted that the finding of the jury awarding Mrs. Wagoner approximately $8,000.00 in damages was excessive being probably calculated, in a large part, on the basis of loss of earnings from her sewing for the public and that the finding of the jury resulted from bias, passion and prejudice, praying that such finding be set aside and in the alternative that the Trial Court order a remittitur in such amount as was proper, which motion was overruled. Appellant did not object to the submission of either special issues No. 18 or No. 20.

Under special issue No. 20 the jury was entitled to consider any physical pain and suffering sustained by Mrs. Wagoner from the injuries received by her as a result of the collision and which in reasonable probability she would suffer in the future, together with the reasonable cash value of the loss of earnings sustained by Mrs. Wag-

oner from the date of the collision and the reasonable cash value of the loss of capacity to work and earn money that she might sustain in the future as a result of the injuries sustained from the collision in question, excluding any compensation for impairment or physical pain which may have been or would be due solely or partly to ailments, congenital defects, or physical conditions which she may have had before the collision. The award of $8,000.00 damages therefore cannot be attributed, as appellant contends, solely to the loss of earnings which Mrs. Wagoner had suffered or would in all probability suffer as a result of the collision, but instead could have been based to some degree, if not wholly, upon the physical pain sustained by Mrs. Wagoner as a result of the injuries caused by the collision and for future physical pain which she might in reasonable probability sustain in the future.

 The testimony of Mrs. Wagoner, together with the testimony of her physicians Dr. J. L. Love and Dr. E. V. Chauvin, amply support the finding of the jury that the injuries suffered by Mrs. Wagoner were caused solely as a result of the collision and that the physical pain and suffering sustained by her were not caused by her previously existing congenital defects, together with her previous fracture of the coccyx. Nor is there any evidence that the award by the jury of $8,000.00 to Mrs. Wagoner as damages for her injuries which resulted from the collision were in any way based upon bias, passion and prejudice on the part of the jury.

In our opinion, the sum of $8,000.00 is not so grossly excessive as to require a remittitur. The Trial Court having heard the testimony and considered the finding of the jury on appellant's Motion for New Trial which sought a remittitur evidently did not believe that the award of damages was excessive since he did not grant a remittitur, although, in his discretion, he was empowered to do so.

We have considered the case of McCollum v. McKellar, Tex.Civ.App., 337 S.W.2d 693, error ref., N.R.E. involving a whiplash injury resulting from a rear-end collision upon the question of excessive damages. The jury awarded McKellar damages of $74,000.00, which amount was reduced by the Court of Civil Appeals to permit a recovery of $54,000.00, which sum the Court did not consider excessive.

After a careful examination of the entire record, it is our opinion that the evidence is ample to support the jury's award to Mrs. Wagoner and that such amount is not excessive, is not manifestly unjust, and is not against the great weight and preponderance of the evidence. Appellant's fifth point of error is overruled.

The judgment of the Trial Court is affirmed.

Affirmed.