Jack W. GRAHAM, Appellant,

v.

Harold S. GOODMAN, Respondent.

No. 75159.

Supreme Court of Missouri,
En Banc.

March 23, 1993.
Rehearing Denied April 20, 1993.

Gregory H. Wolk, St. Louis, for appellant.

Edwin D. Akers, Jr., St. Louis, for respondent.

HOLSTEIN, Judge.

Plaintiff Jack W. Graham brought a two count action for breach of contract and declaratory judgment against defendant Harold S. Goodman. Following a jury trial, a verdict was returned for $36,908 on the breach of contract claim. The trial judge, finding error in the giving of the verdict directing instruction, ordered a new trial. Judgment was entered for defendant on the declaratory judgment count. Plaintiff appealed. The judgment is affirmed in part, and reversed and remanded in part.

## FACTS

In 1985, GFG Associates, Inc., was formed by plaintiff Graham, defendant Goodman, and Kenneth M. Foushee for the purpose of publishing a magazine in Florida. Each of the three individuals was to own one-third of the shares in the corporation. A shareholders agreement was entered into. Article II of the shareholders agreement provides in part:

### INDEMNIFICATION AND SECURITY AGREEMENT AMONG SHAREHOLDERS

If any Shareholder (the "Paying Shareholder") is required to pay any portion of the Initial Indebtedness exceeding the balance of the Shareholder's one-third (⅓) share of the Initial Indebtedness, each other Shareholder agrees to indemnify and hold the Paying Shareholder harmless from the non-paying Shareholder's proportionate share of the excess payment made by the Paying Shareholder. A Shareholder's proportionate share will be deemed to be one third (⅓).

According to Graham, Article II "came about" as a result of oral discussions that the three shareholders "were going to share and share alike." Goodman, an attorney, admitted that the provision was inserted in the agreement after Graham, who was providing most of the capital, expressed a desire to be protected in regard to his investment. The agreement was drawn by Goodman's law partner at Goodman's direction. The attorney who drafted the provision said he was told by Goodman that Graham "wanted Harold Goodman and Ken Foushee to somehow be liable for their shares of the money that was going to be put in the deal."

By the fall of 1987, the business was failing. Graham called Goodman and Foushee in attempts to have a final accounting, but to no avail. In January of 1988, Graham wrote a letter to Goodman saying that each owed him one-third of his investment in the business. Graham at trial calculated his total investment at approximately $268,000. In a 1988 letter, Goodman claimed to have invested $162,276.25. However, of this amount approximately $5,000 had been paid for interest on personal loans by Goodman that were not chargeable as part of the corporate debt. In a letter sent by Foushee to Goodman, Foushee claimed to have invested approximately $125,938.71. This figure, according to Goodman, appears to also have been inflated about $35,000 due to amounts not chargeable as corporate debts. Graham computed what he claimed Goodman owed him by subtracting the amount he calculated was invested by Goodman, $157,800, from the amount Graham invested, $268,550, and dividing the remainder by three.

The result was approximately $36,900.[1]

In support of his calculations, plaintiff called CPA Frank Reedy as an expert witness. Reedy undertook an almost inexplicable calculation in which the total indebtedness, the actual contribution of each of the shareholders, and the surplus above or deficiency below one-third of the total initial indebtedness were the variables. The amount paid by each shareholder over one-third of the initial indebtedness was divided by three. The result was added to the contribution required ·of the other two shareholders. Twice the result was subtracted from the shareholder having paid an amount in excess of one-third of the total initial indebtedness. The result was characterized as an adjusted contribution. The calculations were repeated until approximate equivalency of contributions among the three shareholders was reached. The net amounts that a shareholder was required to pay to another shareholder in each adjustment were added together. The result of this process came to $36,908 owing from defendant to plaintiff.

The CPA suggested that a shorthand method of reaching the same calculation was to multiply the amount of the initial indebtedness paid by the plaintiff by one-third, multiply the initial indebtedness paid by the defendant by one-third, subtract the latter from the former, and the sum resulting was the amount owed by the defendant to the plaintiff.

Goodman, by contrast, calculated the amount that he should be required to reimburse Graham differently. He would total the amount of investment of each of the three investors and divide that by three. He asserted that by following that process he owed nothing to Graham. In addition, Goodman took the position at trial that Graham's contribution to the initial indebtedness was $248,000, that Goodman's contribution was over $191,000, and that Foushee's contribution was approximately $132,000. Goodman's position was that Graham must look to Foushee for the reimbursement of any amount in addition to one-third of the total initial indebtedness. By his calculation and using his figures, Goodman's one-third of the total initial indebtedness was approximately $190,000. He claimed that Graham must look to Foushee for any additional indemnification.

The trial court concluded that Article II was ambiguous as to how the calculation was to be performed and the ambiguity required resolution of factual matters by the jury.

After the parties finished presenting evidence, the jury was given instructions. Among those was Instruction No. 6, based on MAI 4th 26.06, which stated:

> Your verdict must be for Plaintiff if you believe:
>
> FIRST, Plaintiff and Defendant entered into an agreement whereby Plaintiff agreed that in the event that Plaintiff paid more of GFG Associates, Inc.'s Initial Indebtedness than Defendant, Defendant would pay to Plaintiff a sum calculated by the following formula:
>
> One–Third of Initial Indebtedness paid by Plaintiff:_____
>
> Minus:
>
> One–Third of Initial Indebtedness paid by Defendant:_____
>
> Equals:
>
> Sum owed by Defendant:_____
>
> SECOND, Plaintiff performed his agreement, and
>
> THIRD, Defendant failed to perform his agreement, and
>
> FOURTH, Plaintiff was thereby damaged.

The jury returned a verdict of $36,908. A motion for new trial was filed by defendant. The plaintiff filed a motion seeking prejudgment interest. The trial court sus-

---

**1.** These are the numbers that were given in the testimony, although one might question the pre- cise figures.

tained the motion for new trial, overruled the motion for prejudgment interest, and entered judgment for defendant on the claim for declaratory judgment. The appeal challenges the court's ruling granting a new trial, denying the motion for prejudgment interest, and denying relief on the claim for declaratory judgment.

## I.

The basis asserted by the trial court for granting a new trial was error in the giving of Instruction No. 6. On appeal, defendant elaborates on that by arguing, first, that the instruction submitted a question of law, not one of fact and, second, that the instruction was not supported by the evidence.

## A.

The leading case on proper instructions in the case of a breach of a bilateral contract where terms are in dispute is *Busch & Latta Painting Corp. v. State Highway Comm'n,* 597 S.W.2d 189 (Mo.App.1980). That case noted that the question as to whether a provision of a contract was ambiguous is initially a question for the court. 597 S.W.2d at 197. The trial court must then determine from the evidence whether the surrounding circumstances are such that a fact issue exists for the jury to resolve. 597 S.W.2d at 198. Only then is the case submitted to the jury for resolution of the fact issue.

■ Jury instructions are required to be "simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." *Rule 70.02(a).* Consistent with that approach, MAI 4th 26.06 requires that the first paragraph "set out the claim of the plaintiff as to the contract meaning." 597 S.W.2d at 200.

In this case, the parties entered into a bilateral contract regarding indemnification among shareholders. Unquestionably, the contract provision was ambiguous. The evidence did not conclusively resolve which of two competing methods of calculating shareholder indemnification was agreed upon. Thus, a fact issue remained as to which method of calculation was agreed to. The first paragraph of Instruction No. 6 submitted the method of calculating indemnification claimed by plaintiff. The instruction did not submit a question of law to the jury.

■ Defendant argues that plaintiff was required to submit not only his own construction but submit alternate constructions of the indemnification provision. This argument is based on a statement found in *Auto Owners Mut. Ins. Co. v. Wieners,* 791 S.W.2d 751 (Mo.App.1990). There the court of appeals stated, "If the construction of a written contract hinges upon an issue of fact raised by the extrinsic evidence, an appropriate instruction should submit alternate constructions dependent upon the resolution of that factual issue." *Id.* at 758. Assuming the above quote was intended to require a plaintiff to submit an instruction in which jurors are given a choice between how plaintiff claims indemnification should be calculated and how defendant claims indemnification should be calculated, such statement runs afoul of *Busch & Latta Painting Corp.* and MAI 4th 26.06. The verdict directing instruction must hypothesize the proponent's version of the agreement. *Schlemer v. Connell Agencies of Kimberling City, Inc.,* 741 S.W.2d 307, 308 (Mo.App.1987). It is more likely that what the court of appeals intended in *Wieners* was to suggest that if a plaintiff asserted one meaning and the defendant asserted another meaning, the submission of an affirmative converse supporting the defendant's theory might be appropriate. However, no such converse was offered by the defendant here. In addition, the *Wieners* case did not involve an ambiguous provision in a contract. The precise question was whether the term "employee" was ambiguous. The court concluded the word was not ambiguous. Thus, no factual question as to the meaning of "employee" existed and no instruction submitting such question was required. The quotation relied on here by the defendant was *obiter*

*dictum.* *Wieners* is not to be read more broadly than the actual holding of the case requires.

 It is true that Instruction No. 6 deviates slightly from MAI 4th 26.06. Deviations from applicable approved instructions constitute error. However, the prejudicial effect of such error is to be judicially determined. *Rule 70.02(c)*. Defendant claims that Instruction No. 6 failed to require the jury to find that "defendant agreed" to the formula advanced by plaintiff. However, the instruction stated in the first paragraph that "plaintiff and defendant entered into an agreement," and in the third paragraph that "defendant failed to perform his agreement." No reasonable juror reading this instruction would fail to understand that both plaintiff and defendant agreed to the formula submitted in the instruction. Jurors are credited with ordinary intelligence, common sense and an average understanding of the English language. *La Plant v. E.I. Dupont De Nemours and Co., Inc.,* 346 S.W.2d 231, 242–43 (Mo.App.1961). Here the error was harmless, and the verdict should not have been set aside on that basis. *Crabb v. Mid-American Dairymen, Inc.,* 735 S.W.2d 714, 718 (Mo. banc 1987). *See also Leonard v. Hodge,* 654 S.W.2d 165 (Mo.App. 1983).

### B.

 Defendant asserts that Instruction No. 6 was not supported by the evidence. Graham testified that it was his view from the beginning that each of the three would share and share alike. His understanding of the indemnification agreement was that whatever amount the three shareholders expended to pay corporate debt, each shareholder was entitled to look to any other shareholder for reimbursement of one-third of that amount. Both Goodman and Graham were experienced businessmen. Graham testified that "when three people go into a joint venture and share equally, this is the way you do it." When asked what he based that on, he replied, "Custom and the facts of life." [2] Equivocal terms in a contract may be interpreted in light of all the surrounding circumstances, including applicable customs and usages, as well as the contracting parties' own interpretation of the contract. *E.O. Dorsch Elec. Co. v. Plaza Constr. Co.,* 413 S.W.2d 167, 173 (Mo.1967). Viewing this evidence in the light most favorable to the plaintiff and giving him the benefit of all reasonable inferences to be drawn therefrom, there was sufficient evidence to submit his theory as the mutually understood method for calculating the indemnification.

Defendant claims that no one testified that the shorthand formula advanced by CPA Reedy was the agreed upon formula. The argument overlooks the fact that the result of Reedy's shorthand formula (one-third of Graham's payment minus one-third of Goodman's payment) reaches precisely the same result as the formula testified to by Graham (Graham's payment minus Goodman's payment multiplied by one-third). The variation is merely a matter of whether the multiplication is done before or after the subtraction. Because that minor variation in the formula does not affect the result, Instruction No. 6 was consistent with Graham's method of calculating indemnification.

 Assuming, as defendant argues, there is no evidence of the parties' intent regarding the ambiguous provision of the shareholders agreement, another canon of construction comes into play. Defendant undertook responsibility for drafting the agreement. "[I]f a contract is fairly open to two interpretations that construction must be adopted which is against him who prepared it and favor him who merely signed it." *John Deere Co. v. Hensley,* 527

---

**2.** This understanding is consistent with the law of partnership. In partnership, when there are no firm assets to reimburse a partner who has paid more than his share of the partnership obligations, the paying partner may recover from the other partners according to the proportionate share which each should have paid. *Wilson v. Hoover,* 342 Mo. 1182, 119 S.W.2d 768, 772 (1938). *See also § 358.340,* RSMo 1986.

**356**

S.W.2d 363, 365 (Mo. banc 1975). This canon, however, is employed only as a last resort when there is no evidence showing the parties' intent. *Berman v. Berman,* 701 S.W.2d 781, 788 (Mo.App.1985); *Rouggly v. Whitman,* 592 S.W.2d 516, 523 (Mo. App.1979). If defendant is correct in his claim that there was no evidence as to intent, the plaintiff's construction prevails. However, there was evidence of intent of the parties, so the matter was properly submitted to the jury.

Defendant also argues that the instruction was erroneous because the underlined blank spaces improperly removed from the jury the question of the amount of the plaintiff's damages. What the argument fails to acknowledge is that the jury was free to put in such amount of contributions for Graham and Goodman as they believed was supported by the evidence. The fact that the jury ultimately chose to insert the figures suggested by plaintiff's evidence did not remove the question of damages from the jury's consideration. The factual issue in this case was which of two methods of calculating indemnification was agreed upon by the parties. Instruction No. 6 was consistent with the holding in *Busch & Latta Painting Corp., supra.*

## II.

 Plaintiff also claims the trial court erred in finding in favor of defendant on count II, which seeks declaratory judgment along with attorney's fees and expenses. A declaratory judgment action is not used where an adequate remedy already exists at law. *Harris v. State Bank and Trust Co. of Wellston,* 484 S.W.2d 177, 179 (Mo.1972); *Polk County Bank v. Spitz,* 690 S.W.2d 192, 194–95 (Mo.App. 1985). Here, plaintiff's remedy at law on count I precluded a remedy in count II.

## III.

Finally, plaintiff claims the trial court erred in refusing to award prejudgment interest. This claim, however, was not argued nor submitted to the jury, so it cannot be raised by post-verdict motion. *Mochar Sales Co. v. Meyer,* 373 S.W.2d 911, 916 (Mo.1963).

## CONCLUSION

The dismissal of count II for declaratory judgment is affirmed, the trial court's order granting a new trial is reversed and the cause is remanded to the trial court to enter a judgment consistent with the jury's verdict.

All concur.