# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2158

_____

Phillip L. Rosemann,              \*
                                           \*

    Plaintiff - Appellant,      \*

                                           \*   Appeal from the United States

v.                            \*   District Court for the

                                         \*   Eastern District of Missouri.

Roto-Die, Inc.,               \*

                                         \*

    Defendant - Appellee.      \*

_____

Submitted: February 11, 2004
Filed: July 29, 2004

_____

Before LOKEN, Chief Judge, BOWMAN and WOLLMAN, Circuit Judges.

_____

LOKEN, Chief Judge.

Philip Rosemann is a minority shareholder in Roto-Die, Inc., a closely held corporation. Rosemann and other family members entered into a Stock Redemption Agreement in 1978, when Rosemann received his initial Roto-Die shares by gift from his father. When a dispute arose concerning the redemption price under that Agreement, Rosemann commenced this diversity action, alleging that he tendered twenty shares of stock and Roto-Die "breached the Stock Redemption Agreement by failing and refusing to redeem the twenty (20) shares . . . at present fair market value."

The Agreement provides that, if Rosemann notifies Roto-Die of his desire "to sell any or all of his shares of stock . . . then the Company shall purchase all of said shares of the selling shareholder at the price above set forth." The only provision that arguably contains a "price above set forth" appears in a different paragraph of the Agreement and states: "The value of each share of stock of the Company held by each Stockholder shall be $9.75, which is the fair market value at the date of this agreement." The district court granted summary judgment in favor of Roto-Die, concluding that Roto-Die properly refused Rosemann's conditional tender of the twenty shares because the Agreement unambiguously calls for a sale price of $9.75 per share. We remanded for further proceedings, concluding that the redemption price term is ambiguous and extrinsic evidence is needed to determine the intent of the contracting parties. Rosemann v. Roto-Die, Inc., 276 F.3d 393, 398-401 (8th Cir. 2002).[1] On remand, the case was tried to a jury which returned a verdict in favor of Roto-Die. Rosemann again appeals, arguing the district court[2] erred in instructing the jury and in four evidentiary rulings. We affirm.

## I. The Jury Instructions.

The district court based its verdict directing instruction on Missouri Approved Instruction 26.06, which applies when the "terms and breach" of a contract are at issue. This was clearly the correct approach. "In any case where an issue of ambiguity exists, the terms of the contract are in dispute; and MAI 26.06 must be the starting point for the instruction of the jury." Busch & Latta Painting Corp. v. State Highway Comm'n, 597 S.W.2d 189, 200 (Mo. App. 1980); see James O'Brien &

---

[1]Our prior opinion explained the nature of the ambiguity and set out additional background facts that need not be repeated here.

[2]The HONORABLE E. RICHARD WEBBER, United States District Judge for the Eastern District of Missouri.

Assocs., Inc. v. Am. Sportsman Travel, Inc., 819 S.W.2d 62, 64 (Mo. App. 1991). Consistent with the MAI 26.06 format, the district court instructed:

> Your verdict must be for [Rosemann] if you believe:
> First, [Rosemann] and [Roto-Die] entered into an agreement whereby [Roto-Die] would pay [Rosemann] . . . current fair market value of [Roto-Die]'s stock upon request of [Rosemann] that [Roto-Die] purchase any or all of [Rosemann]'s stock; and
> Second, [Rosemann] performed his agreement; and
> Third, [Roto-Die] failed to perform its agreement; and
> Fourth, [Rosemann] was thereby damaged.

On appeal, Rosemann first argues that the district court violated the law of the case doctrine by refusing to instruct the jury that the price term in the Agreement was ambiguous when our prior opinion so held. This contention is without merit. Our prior opinion reversed the grant of summary judgment and remanded for further proceedings. We did not address the question of jury instructions; indeed, we did not direct that the issue be submitted to a jury. See Busch & Latta, 597 S.W.2d at 198 ("the mere fact of ambiguity does not automatically require intervention of a jury").

Rosemann next argues that the failure to give an explicit ambiguity instruction misled the jurors into believing "they could find in favor of Rosemann only if the Agreement is definitive concerning the price term." This was unfairly prejudicial, Rosemann explains, because to prevail he did not have to convince a jury "that the Agreement has an unambiguous price term -- fair market value." Like the district court, we disagree. Rosemann's complaint alleged that Roto-Die breached the Agreement by refusing to redeem the tendered twenty shares "at present fair market value." Prior to trial, in an order not challenged on appeal, the district court ruled, in accordance with the complaint, that Rosemann "is precluded from seeking any valuation for his shares except fair market value." Under Missouri law, when the parties urge conflicting interpretations of an ambiguous term, "[t]he verdict directing

instruction must hypothesize the proponent's version of the agreement." Graham v. Goodman, 850 S.W.2d 351, 354 (Mo. banc 1993). Thus, when the district court instructed the jury that Rosemann must prove that Roto-Die agreed to purchase his stock for fair market value, the instruction fairly presented the case to the jury, correctly stated the governing law, and gave Rosemann ample opportunity to urge the jury to find that the parties to the Agreement agreed upon fair market value as the redemption price. See H.H. Robertson v. V.S. DiCarlo Gen. Contractors, Inc., 950 F.2d 572, 576 (8th Cir. 1991) (standard of review).

## II. The Challenged Evidentiary Rulings.

**A. A Parol Evidence Rule Issue.** Rosemann argues that the district court misapplied the Missouri parol evidence rule in limiting the testimony of Rosemann's brother Michael. In 1988, Roto-Die purchased Michael's five thousand shares of stock for $850,000 ($170 per share) under a Redemption Agreement expressly providing that it "contains the entire understanding of the parties hereto." The parties to the agreement included Rosemann, who signed as a "Non-selling Shareholder" and was an "Obligor" under a portion of the agreement that gave Michael the possibility of an additional payment if Roto-Die was sold to a third party within the following ten years. At trial, Rosemann offered evidence intended to show that Michael in fact received $3,000,000 rather than $850,000 for his stock. The district court excluded that evidence as contrary to the parol evidence rule. As the parol evidence rule is a rule of substantive law, we apply Missouri law in resolving this issue. See Union Elec. Co. v. Fundways, Ltd., 886 S.W.2d 169, 170 (Mo. App. 1994); Bellows v. Porter, 201 F.2d 429, 432 (8th Cir. 1953).

Under Missouri law, "Extrinsic evidence of a prior or contemporaneous agreement is generally not admissible to vary, add to, or contradict the terms of an unambiguous and complete written document." Union Elec., 886 S.W.2d at 170. The district court properly excluded Michael's handwritten notes and testimony relating

to proposals and negotiations leading up to the signing of the Redemption Agreement. These prior dealings were superseded by or merged into the integrated agreement. Rosemann also offered evidence relating to separate employment and leasing arrangements between Michael and Roto-Die. As the district court recognized, this evidence raised a closer question because the parol evidence rule does not bar evidence of "a wholly separate and independent contract that did not inherently conflict with the written [integrated] agreement." C. L. Maddox, Inc. v. Benham Group, Inc., 88 F.3d 592, 599 (8th Cir. 1996). Here, Rosemann sought to use the separate agreements to show that Michael received more for his shares than the $850,000 specified in the Redemption Agreement. That was in inherent conflict with the integrated writing. Moreover, establishing whether the separate transactions were related to the Redemption Agreement and, if so, what was the true price paid Michael for his stock would have mired the trial in tangential facts likely to distract and confuse the jury. For these reasons, the district court did not abuse its discretion in excluding evidence of these additional transactions.

In addition, the main issue at trial was whether the redemption price in the 1978 Stock Redemption Agreement was fair market value, as Rosemann contended, or $9.75 per share, as Roto-Die contended. Evidence that Roto-Die paid Michael $170 per share in 1988 was relevant to that issue, admitted at trial, and emphasized by Rosemann to the jury. In these circumstances, whether other transactions between Michael and Roto-Die had the effect of increasing the $850,000 that Michael received for his stock would not have affected the jury's decision to reject Rosemann's claim that current fair market value is the redemption price that he must be paid under the Stock Redemption Agreement.

**B. The Diversion of Roto-Die Funds.** In 1989, Rosemann diverted $800,000 from Roto-Die to an account he controlled. Prior to trial, he filed a motion in limine to exclude evidence of this transfer. The district court ruled that the evidence would "likely be admissible" but "it's too early to decide." At trial, during Rosemann's

opening statement, his attorney disclosed that Rosemann diverted Roto-Die funds as "kind of an insurance policy" because he feared his father was "going to kick me out the door and I wouldn't have anything." Rosemann then testified about the diverted funds on direct and cross examination, without objection. On appeal, Rosemann argues that the district court erred when it "denied the motion in limine and allowed Roto-Die to present" this irrelevant and highly prejudicial evidence.

This contention is without merit. Rosemann failed to preserve any evidentiary issue at trial because he referred to the transfer in opening statement, testified to it on direct examination, and did not object to cross examination on the issue. See Huff v. Heckendorn Mfg. Co., 991 F.2d 464, 466 (8th Cir. 1993). Thus, the only issue properly before us is the district court's pretrial ruling on the motion in limine. See Mahlberg v. Mentzer, 968 F.2d 772, 776 (8th Cir.), cert. denied, 506 U.S. 1026 (1992). The evidence that Rosemann thought he needed an "insurance policy" was likely to be relevant because it tended to show his belief -- or at least his fear -- that the redemption price under the Stock Redemption Agreement was $9.75 per share. In these circumstances, the court did not abuse its discretion in deferring until trial a ruling on whether this probative value would be "substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403.

**C. Buyout Negotiations.** Rosemann next argues that the district court improperly admitted evidence of settlement negotiations when it permitted Melvin Stanley, Roto-Die's President, to testify about Roto-Die's willingness to engage Rosemann in buyout negotiations in 1997. During his case-in-chief, Rosemann introduced an exchange of letters in which Rosemann demanded that Roto-Die state a share price under the Agreement and Stanley responded, "we take your letter as an invitation to negotiate the buyout of your shares outside of the stock redemption agreement." Stanley then testified for the defense, over Rosemann's relevance objection, that the letters signaled Roto-Die's willingness "to engage Phillip in

negotiations with respect to a potential purchase of his shares outside of the stock redemption agreement."

Assuming without deciding that Rosemann properly preserved this issue for appeal, the district court did not err. Rosemann opened up the issue by introducing and testifying about the exchange of letters. See Anheuser-Busch, Inc. v. John Labatt Ltd., 89 F.3d 1339, 1345 (8th Cir. 1996), cert. denied, 519 U.S. 1109 (1997). In addition, Rosemann introduced evidence that Roto-Die redeemed the shares of his sister Virginia and his brother Michael for substantially more than $9.75 per share. The parties disputed whether those were transactions made under the Stock Redemption Agreement, or were separately negotiated outside that Agreement. Testimony explaining the exchange of letters between Rosemann and Stanley was potentially relevant to that issue, making this evidence admissible for "another purpose." FED. R. EVID. 408.

**D. Personal Knowledge About the Agreement.** Finally, Rosemann argues that the district court improperly permitted Roto-Die's president and attorney to testify as to their understanding of the price term in dealing with minority shareholders on behalf of Roto-Die because these Roto-Die agents lacked personal knowledge of the intent of the contracting parties to the 1978 Agreement. See FED. R. EVID. 602. We disagree. "Equivocal terms in a contract may be interpreted in light of all the surrounding circumstances, including . . . the contracting parties' own interpretation of the contract." Graham, 850 S.W.2d at 355.

We affirm the judgment of the district court and grant appellant's motion to supplement the record on appeal.

_____