

# In the Missouri Court of Appeals
## Eastern District
### DIVISION THREE

| | | |
|---|---|---|
| ATC COMPANY, INC., | ) | No. ED100501 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STEVEN M. MYATT and JEANNE MYATT, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| Respondents, | ) | |
| | ) | Honorable Nancy L. Schneider |
| and | ) | |
| | ) | |
| PINEWOODS INVESTMENTS, LLC, | ) | |
| | ) | |
| Appellant. | ) | Filed: June 30, 2014 |

## I. INTRODUCTION

Pinewoods Investments, LLC ("Purchaser") appeals, for the second time, a judgment of the Circuit Court of St. Charles County in favor of Steven and Jeanne Myatt (collectively, "Seller") on Purchaser's claims for declaratory relief and breach of contract and Seller's claim for breach of contract. In their claims, both Purchaser and Seller asserted a right to earnest money under a real estate sale contract. Purchaser argues the trial court erred on remand in entering its judgment ordering payment of the earnest money to Seller because the judgment misapplies the law and is against the weight of the evidence. We reverse the judgment and remand the case to the trial court for entry of judgment in accordance with this opinion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 2003, Seller entered into a real estate sale contract (the "Sale Contract") with real estate broker Sharon Boyet as purchaser. Under the Sale Contract, Seller agreed to sell four tracts of land in two separate closings. Tracts one and two would be sold at the first closing, scheduled to occur no later than March 2004. Tracts three and four would be sold at the second closing, scheduled to occur within five years after the date of the Sale Contract, or no later than July 2008.

The Sale Contract included several contingencies for the purchaser's benefit, including a contingency for "favorable results of a feasibility study regarding Purchaser's contemplated development after analysis of relevant factors." Acceptance of the feasibility study was within the purchaser's discretion. The Sale Contract required the purchaser to provide Seller with copies of any reports and studies prepared with regard to the contingencies. The Sale Contract also provided: "All terms and conditions of the sale/closing of Tract 1 and Tract 2 shall also pertain to the closing of Tract 3 and Tract 4 . . . ."

The Sale Contract required the purchaser to deposit $40,000 as earnest money with the title company, to be retained until the second closing. Ms. Boyet deposited $40,000 with a title company that later transferred the money to escrow agent ATC Company, Inc. ("ATC").

Ms. Boyet and her client, Purchaser, had difficulty securing required zoning approval for tracts one and two and requested the date of the first closing be postponed until April 2004. Accordingly, Seller and Ms. Boyet as the purchaser entered into a Real Estate Sale Contract Extension Agreement (the "Extension Agreement"). The Extension Agreement required Purchaser to make a nonrefundable payment of $15,000 directly to Seller as consideration for

postponing the first closing.[1]  Paragraph one of the Extension Agreement provided: "Purchaser agrees that the Contract is no longer contingent, and is binding on the Purchaser and Seller, and in the event the property does not close for any reason, Sellers will be entitled to the full . . . ($40,000) earnest money without any claim thereto by Purchaser."  The terms "Contract" and "property" were not defined in the Extension Agreement.  At some point after execution of the Extension Agreement, Ms. Boyet assigned the Sale Contract and Extension Agreement to Purchaser.

The first closing occurred as planned in 2004.  However, on June 26, 2008, Ms. Boyet notified Seller's counsel that Purchaser was "declining acceptance" of tracts three and four based on the feasibility contingency in the Sale Contract.  When both parties asserted a right to the $40,000 in earnest money, ATC filed a petition for interpleader against Seller and Purchaser as defendants.  ATC deposited the earnest money into the trial court's registry for a determination of which party was entitled to the funds.[2]

Purchaser filed a declaratory judgment cross-claim and a breach of contract cross-claim against Seller, asserting Purchaser was entitled to the earnest money.  The basis for both cross-claims was Purchaser's argument that the removal of contingencies in the Extension Agreement concerned only the first closing, not the second closing.  In response, Seller filed a breach of contract cross-claim against Purchaser for the earnest money, alleging the Extension Agreement removed all contingencies for both closings.

In September 2011, the trial court held a bench trial on the claims of Purchaser and Seller against each other.  The trial court issued a judgment in Seller's favor on: (1) Purchaser's cross-claims for declaratory relief and breach of contract; and (2) Seller's cross-claim for breach of

---

[1] The second closing was not yet scheduled at this time.
[2] ATC is not a party to this appeal.

contract. The trial court ordered payment to Seller of the earnest money plus accumulated interest. The trial court's judgment did not include findings of fact. Purchaser appealed.

In Purchaser's first appeal, we held the word "Contract" in paragraph one of the Extension Agreement was ambiguous because it could mean the Sale Contract in its entirety or the first closing alone. *ATC Co., Inc. v. Myatt*, 389 S.W.3d 732, 736 (Mo. App. E.D. 2013) ("*Myatt I*"). We also held the word "property" in the Extension Agreement was ambiguous because it could refer to tracts one and two only or to all four tracts of land. *Id.* at 737. As a result, we concluded it was necessary to look outside the contract to determine whether the parties intended to remove contingencies for both closings or for the first closing alone. *Id.* Because the record was silent as to whether the trial court resolved the ambiguity, we reversed and remanded the case to the trial court for findings on the issue. *Id.* at 737-38. We requested clarification if the trial court had already resolved the ambiguity in favor of Seller. *Id.* at 738. On the other hand, if the trial court had not resolved the ambiguity, we instructed it to consider extrinsic evidence of the contractual intent of the parties at the time they signed the Extension Agreement. *Id.* This court stated: "The trial court may decide whether this contractual intent can be determined from the testimony already heard over continuing objection or whether a new hearing is needed." *Id.*

On remand from *Myatt I*, the trial court did not conduct a new hearing. Instead, the trial court entered a "Judgment Ruling on Contractual Ambiguity" providing as follows:

> On [remand] from the Court of Appeals, the court now clarifies its prior Judgment.
>
> The court did find at trial the terms "Contract" and "Property" contained in the real estate sale contract extension to be ambiguous. The court then rejected Buyers' (Appellants) urging to construe the document against Sellers (Respondents) and heard evidence of the intent of the parties over objection of Sellers. The court considered among other things the extensive experience of

4

Buyers' witnesses in the areas of real estate sales and construction development versus the inexperience of Sellers, the stated reasons for Buyers' decision not [to] proceed with the second closing, including the fact that land prices had "tanked" and their determination that the property was "not worth the price," the extent of the "due diligence" and "feasibility study" done by the Buyers, the Sellers' reliance on the waiver of contingencies clause in the extension document, and the reason the Buyers' [sic] did not immediately demand payment of the $40,000.00.

The court then entered its Judgment in favor of [Sellers]. In view of the fact that neither party had requested the court make Findings of Fact at the time of trial, the court did not set forth the reasons for its Judgment.

Purchaser appeals this judgment.

### III. STANDARD OF REVIEW

In an appeal from a court-tried civil case, our review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *White v. Dir. of Revenue*, 321 S.W.3d 298, 307-08 (Mo. banc 2010). Accordingly, this court will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d at 32.

"This Court applies *de novo* review to questions of law decided in court-tried cases." *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012). "The quintessential power of the judiciary is the power to make *final* determinations of questions of law, and courts may not delegate that authority to anyone else." *Id.* at 44 (quotation omitted).

The "weight" of the evidence "denot[es] probative value and not the quantity of evidence." *White*, 321 S.W.3d at 309. Thus, "[t]he weight of evidence is not determined by mathematics, but on its effect in inducing belief." *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo. App. S.D. 2010) (quotation omitted). "Although consideration of probative value necessarily involves some consideration of evidence contrary to the judgment, we nevertheless defer to the trial court as the finder of fact in our determination as to whether that judgment is against the

5

weight of the evidence." *Id.* (quotation omitted). "[W]here the resolution of conflicting testimony is required to determine the merits of an against-the-weight-of-the-evidence argument, we defer to the trial court's credibility determinations . . . ." *Id.* "To set aside a judgment as 'against the weight of the evidence,' this Court must have a firm belief that the judgment is wrong." *White*, 321 S.W.3d at 308.

## IV. DISCUSSION

In its sole point on appeal, Purchaser argues the trial court erred in construing the ambiguities in the Extension Agreement in favor of Seller and determining the Extension Agreement removed contingencies for the second closing. Purchaser asserts the trial court misapplied the law by failing to give meaning to all provisions in the Extension Agreement and harmonize the Extension Agreement with the Sale Contract. Purchaser also claims the judgment is against the weight of the evidence because it is irreconcilable with the parties' conduct. We hold the trial court misapplied the law in addressing the mandate in *Myatt I* and its judgment in Seller's favor is against the weight of the evidence.

### A. Trial Court Misapplied the Law

In *Myatt I*, this court reviewed the introductory clauses in the Extension Agreement to determine the document's purpose.[3] 389 S.W.3d at 736. We also reviewed the following disputed language in the Extension Agreement: "Purchaser agrees that the Contract is no longer contingent, and is binding on the Purchaser and Seller, and in the event the property does not

---

[3] These clauses provided:
> WHEREAS, the Parties entered into a SALE CONTRACT dated July 18, 2003; and
> WHEREAS, the last date for closing on the aforesaid Contract was March 15, 2004; and
> WHEREAS, Purchaser wishes to extend the Contract until April 15, 2004.
> NOW THEREFORE, in consideration of the agreements herein made and Sellers agreeing to extend the time of closing, the Parties do hereby agree as follows:

6

close for any reason, Sellers will be entitled to the full . . . ($40,000) earnest money without any claim thereto by Purchaser." *Id.* We concluded the words "Contract" and "property" were ambiguous. *Id.* at 736-37. We reversed the trial court's judgment and remanded the case with the following instructions:

> Because our *de novo* analysis concludes that the Extension Agreement is ambiguous, that ambiguity must be resolved. Resolving a contractual ambiguity is a question of fact for the fact-finder to resolve. Because the record on appeal is silent as to whether the trial court resolved the ambiguity, we remand for findings on this issue. If the trial court already resolved the ambiguity in favor of Seller, we ask for clarification. If the trial court has not resolved the ambiguity, we instruct the trial court to consider extrinsic evidence of the contractual intent of the parties at the time they signed the Extension Agreement. The trial court may decide whether this contractual intent can be determined from the testimony already heard over continuing objection or whether a new hearing is needed.

*Id.* at 737-38 (internal citation omitted). In other words, the task for the trial court on remand was to issue a judgment with findings explaining how it resolved the ambiguity in light of the contract and extrinsic evidence of the parties' intent regarding contingencies for the second closing.

On remand from *Myatt I*, the trial court did not conduct a new hearing. The trial court issued a "Judgment Ruling on Contractual Ambiguity" providing as follows:

> On [remand] from the Court of Appeals, the court now clarifies its prior Judgment.
>
> The court did find at trial the terms "Contract" and "Property" contained in the real estate sale contract extension to be ambiguous. The court then rejected Buyers' (Appellants) urging to construe the document against Sellers (Respondents) and heard evidence of the intent of the parties over objection of Sellers. The court considered among other things [1] the extensive experience of Buyers' witnesses in the areas of real estate sales and construction development versus the inexperience of Sellers, [2] the stated reasons for Buyers' decision not [to] proceed with the second closing, including the fact that land prices had "tanked" and their determination that the property was "not worth the price," [3] the extent of the "due diligence" and "feasibility study" done by the Buyers, [4] the Sellers' reliance on the waiver of contingencies clause in the extension

7

document, and [5] the reason the Buyers' [sic] did not immediately demand payment of the $40,000.00.

The court then entered its Judgment in favor of [Sellers]. In view of the fact that neither party had requested the court make Findings of Fact at the time of trial, the court did not set forth the reasons for its Judgment.

The trial court's "Judgment Ruling on Contractual Ambiguity" failed to provide the clarification requested in *Myatt I*. The trial court did not make findings on the parties' intent regarding removal of contingencies for the second closing and did not explicitly state it resolved the ambiguity in the Extension Agreement in Seller's favor. Instead, the trial court considered five factors that persuade us the court addressed a different issue on remand.

Factors [2] and [3] demonstrate the trial court framed the issue as whether Purchaser breached the Sale Contract by failing to conduct an adequate feasibility study before invoking that contingency to terminate the contract. The trial court's factors [2] and [3] were: "[2] the stated reasons for Buyers' decision not [to] proceed with the second closing, including the fact that land prices had 'tanked' and their determination that the property was 'not worth the price,' [and] [3] the extent of the 'due diligence' and 'feasibility study' done by the Buyers." These factors imply the trial court believed Purchaser terminated the contract for an impermissible reason—price, given changed market conditions—and failed to conduct sufficient due diligence to allow it to properly invoke the feasibility contingency. However, Seller's cross-claim contained no allegation that Purchaser breached the contract by improperly invoking the feasibility contingency. The question to be resolved pursuant to the parties' pleadings and *Myatt I* was whether the parties intended to eliminate all contingencies for the second closing. Factors [2] and [3] do not assist in answering this question. A finding that there were no contingencies would be inconsistent with the court's apparent finding that Purchaser did not fulfill its obligations concerning the feasibility contingency.

8

As to factors [1], [4], and [5], the trial court did not provide an explanation as to how they support a finding that the parties intended to eliminate contingencies for the second closing. Those three factors were: [1] Purchaser's "extensive experience" relative to Seller in real estate sales and development; [4] Seller's "reliance" on a removal of contingencies; and [5] "the reason the Buyers' [sic] did not immediately demand payment of the $40,000.00." We cannot find evidence in the record supporting these factors or showing how they might be relevant to the parties' intent regarding contingencies at the time they entered into the Extension Agreement. With no explanation from the trial court or citation of relevant supporting evidence, it is unclear how these factors support resolution of the contractual ambiguity in Seller's favor.

In summary, the mandate in *Myatt I* required the trial court to issue a judgment with findings explaining how it resolved the ambiguity in light of the contract and extrinsic evidence of the parties' intent regarding contingencies for the second closing. The trial court did not make findings in accordance with *Myatt I*, constituting a misapplication of law that requires us to reverse the judgment. *See JAS Apartments, Inc. v. Naji*, 354 S.W.3d 175, 182-83 (Mo. banc 2011).

### B. Judgment for Seller Is Against the Weight of the Evidence

When a trial court fails to make a determination required by an appellate court's mandate, we may review the evidence to decide whether the issue that was to be addressed may be resolved without a second remand to answer the same unanswered question. *See id.* at 183. Accordingly, we review the record here to determine whether we can answer the question posed in *Myatt I*: what was the parties' intent at the time they signed the Extension Agreement regarding contingencies for the second closing? *See Myatt I*, 389 S.W.3d at 736-38. Because the

9

trial court did not hold a new hearing on remand, our review is limited to the trial record from

*Myatt I.*

"In discerning the meaning each party intended to assign to a disputed contract term, and in exploring whether each party knew or had reason to know the meaning intended by the other party, the court may utilize any evidence that is ordinarily admitted to prove a state of mind." 5 MARGARET N. KNIFFIN, CORBIN ON CONTRACTS § 24.10 (Joseph M. Perillo ed., rev. ed. 1998).

> [I]t is often necessary to consider not only the contract between the parties, but subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their acts and deeds, and other external circumstances that cast light on the intent of the parties.

*Butler v. Mitchell-Hugeback, Inc.*, 895 S.W.2d 15, 21 (Mo. banc 1995) (quotation omitted). "Equivocal terms in a contract may be interpreted in light of all the surrounding circumstances, including applicable customs and usages, as well as the contracting parties' own interpretation of the contract." *Graham v. Goodman*, 850 S.W.2d 351, 355 (Mo. banc 1993).

Unsurprisingly, the parties' trial testimony as to their own interpretation of the contract is exactly in accordance with their respective positions in this litigation. Sharon Boyet, who signed the Extension Agreement as the buyer, testified that she and the members of Purchaser intended to eliminate contingencies only for the first closing, not the second closing. On the other hand, Steven Myatt, who signed the Extension Agreement along with his wife as the seller, testified that he intended a removal of contingencies for both closings.[4]

However, we must look beyond this testimony to evidence of the parties' conduct for insight into their contractual intent. In determining intent, "*[u]nilateral* self-serving actions . . . would necessarily and logically tend to carry less weight than the conduct of the parties between

---

[4] The trial court made no credibility findings.

10

*themselves*." *Lee v. Bass*, 215 S.W.3d 283, 290 (Mo. App. W.D. 2007). "It is well established that in construing an ambiguous or disputed contract the interpretation the parties placed on it *by their conduct* is of great weight in determining what the agreement actually was." *Landau v. Laughren*, 357 S.W.2d 74, 80 (Mo. 1962) (emphasis added); *accord MLPGA, Inc. v. Weems*, 838 S.W.2d 7, 9 (Mo. App. W.D. 1992).

Here, the only evidence presented as to the parties' conduct shows they intended to preserve contingencies for the second closing. On June 26, 2008, Ms. Boyet notified Seller's counsel that Purchaser was "declining acceptance" of tracts three and four. Approximately one month later, on July 24, Seller's counsel sent a letter to the title company demanding payment of the earnest money to Seller. The July 24 letter stated Purchaser "has breached the contract, has not done its due diligence, and has not provided me and my clients with necessary copies to fulfill obligations in the contract." On August 4, Seller's counsel sent a letter to Purchaser stating Seller was entitled to the earnest money because:

> You did not complete any of your due diligence as required by the contract and present us with copies thereof. Your agent, Sharon Boyet, has admitted to me that you did not actually do an appraisal, and I must assume that you did not do any of the other due diligence in the contract.

The July 24 and August 4 letters from Seller's counsel establish that Seller believed Purchaser had contingencies for the second closing but breached the contract by failing to complete due diligence obligations associated with the contingencies. Neither letter even hints that Seller believed there were no contingencies for the second closing.

It was not until several months later that Seller asserted its current interpretation of the Extension Agreement. In a November 10, 2008 letter to ATC, Seller's counsel stated Seller was entitled to the earnest money because the "written [Extension Agreement provided] that the earnest money was non-refundable, and if the contract did not close 'for any reason' that [Seller]

11

would be entitled to the full $40,000.00." Given Seller's different interpretation in the two earlier letters, the November 10 letter is a belated, self-serving interpretation that does not show the parties' intent at the time they signed the Extension Agreement.

Finally, the evidence concerning applicable custom and usage in real estate transactions demonstrates the parties could only have intended to eliminate contingencies for the first closing. *See Graham*, 850 S.W.2d at 355 ("Equivocal terms in a contract may be interpreted in light of . . . applicable customs and usages . . . ."). Ms. Boyet testified that she had worked as a real estate broker for thirty-two years and had been involved in over one hundred residential and commercial real estate transactions. Ms. Boyet stated she had participated in four or five transactions similar to this one in that they involved a first closing followed years later by a second closing. Ms. Boyet testified that "nobody would release contingencies on a piece of property to close five years down the road."

Likewise, the testimony of one former and one current member of Purchaser supports a conclusion that under applicable custom and usage, the parties did not intend to remove contingencies for the second closing. Royce Yust, a former member of Purchaser, testified that he had worked in construction development for twenty-seven years and had been involved in many real estate purchase transactions. Mr. Yust stated the purpose of contingencies like those in the Sale Contract is "to see if it's still a viable piece of ground to develop." Mr. Yust stated: "I would have never waived off on contingencies on something this far out." Tom Johnson testified that he was a current member of Purchaser and was involved in "design[ing] and develop[ing] the ground." Mr. Johnson stated he would never eliminate contingencies like a feasibility study for a closing occurring five years after the contract date. Mr. Johnson explained

that in such a case, "there [are] too many questions" such as whether rezoning and the development of surrounding projects will occur as planned.

Given the foregoing evidence of the parties' conduct and applicable custom and usage, the weight of the evidence shows the parties did not intend to remove contingencies for the second closing. Therefore, the trial court's judgment for Seller on the parties' claims against each other for the earnest money is against the weight of the evidence. Point one is granted.

## V. CONCLUSION

We reverse the trial court's judgment and remand the case to the trial court for entry of judgment in accordance with this opinion.

_____
Angela T. Quigless, Judge

Mary K. Hoff, P.J., and
Kurt S. Odenwald, J. Concurs.

13