**Terry PENBERTHY,
Plaintiff–Respondent,**

v.

**NANCY TRANSPORTATION, INC.,
Defendant–Appellant.**

**No. 58443.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 19, 1991.

Craig A. Sullivan, Anderson, Gilbert & Garvin, Clayton, for defendant-appellant.

Joseph V. Neill, St. Louis, for plaintiff-respondent.

CRANE, Judge.

Defendant, Nancy Transportation, Inc. [Nancy], appeals from a judgment of the trial court entered on a jury verdict in favor of the plaintiff, Terry Penberthy, in the amount of $10,000 for breach of a sales commission agreement. We reverse and remand.

Nancy is an interstate trucking company with offices located in St. Louis County. On November 17, 1982, Thomas Grasso, President and owner of Nancy, signed a "Commission Sales Agreement" between Nancy and Penberthy. The agreement provides in relevant part:

Whereas, the SALES REPRESENTATIVE is Mr. Terry D. Penberthy engaged in the business of selling and offering for sale or negotiating transportation in Interstate or Intrastate commerce over the public highways; and

Whereas, NANCY TRANSPORTATION, INC., is a CARRIER in Interstate and/or Intrastate Commerce Commission and/or other appropriate commissions.

NOW THEREFORE, in consideration of the mutual covenants and promised [sic] hereinafter set forth, the parties agree as follows:

1. The terms of this Agreement shall be continuous provided, however, that either party may terminate the same upon 30 days written notice. If, however, the CARRIER institutes termination, commission shall continue to be paid on all SALES REPRESENTATIVE accounts beyond the date of cancellation for a period of *not less than one year.*

2. Commissions shall be set at 5% of the gross revenue actually enjoyed by the CARRIER and excluding interline revenues. Lower or higher commissions are permitted where both parties agree on a special account. All commissions to be paid monthly (by the 15th of the following month).

3. The SALES REPRESENTATIVE shall retain the right to transfer client accounts to another carrier after termination of this agreement.

4. The CARRIER shall have the right to decline a shipment on any given account for good cause.

Nancy conveyed this agreement to Penberthy by letter dated November 24, 1982, signed by John A. Robb, who was at that time Vice–President of Marketing and Sales for Nancy. The body of this letter reads as follows:

This letter is your authority to represent Nancy Transportation on a commission basis as our agent.

Per our conversation, you agreed to the 5% commission figure we had discussed earlier. I have attached a commission agreement signed by R. Thomas Grasso, President. Please sign the original and return to my attention keeping the other copy for yourself.

Terry, we will be happy to furnish you with business cards if you wish. I will be sending you shortly Advertising and Marketing handouts along with OP–1 Forms.

I believe that I have mentioned all the items we discussed and agreed to verbally. If I have left something out, it is purely an oversight on my part and a phone call from you should bring our conflict to a quick conclusion.

On October 13, 1983, Nancy terminated this agreement. Thereafter, Penberthy initiated this action for breach of contract, claiming that Nancy had not paid him all commissions due under the agreement.

Except in the termination clause, the written agreement does not clearly state that the commissions were to be paid on Penberthy's accounts. However, there was no dispute at trial and no dispute on this appeal that the commissions applied to Penberthy's accounts during the term of the agreement and for one year thereafter. Furthermore, there was no dispute that Penberthy was entitled to commissions on accounts he "procured". The disputed question at trial was what constituted "procurement" of an account. This question was not addressed by the written agreement.

The contract did not require Penberthy's full time or exclusive services and the evidence disclosed that he spent approximately 15 hours a week on Nancy's business and held other employment while he was under contract with Nancy. Penberthy testified that his function as a sales representative was to contact shipping supervisors and receivers in order to procure business for Nancy hauling general commodities freight.

At the time he signed the contract with Nancy, Penberthy showed Robb, the Nancy vice-president, a list he had compiled of 48 companies who used carriers. Prior to coming to Nancy, Penberthy had written each of these companies to advise them that he would be representing Nancy. One of the factual disputes at trial was whether there was an agreement that these 48 companies would become Penberthy's accounts if they eventually used Nancy, irrespective of any further sales efforts made by Penberthy. Penberthy so testified and offered Robb's deposition testimony that, except for those companies on the list already doing business with Nancy, Penberthy was "supposed to get credit for any shipments that he handled or that we enjoyed the business from, from any of those accounts that are on that list." Robb further testified, "[w]e agreed not to call upon these people [on the list] when we took him in and hired him." On the other hand, Grasso testified that he told Penberthy at the time he contracted with Nancy that he would not have an "exclusive" on any particular account because Nancy planned on having other sales representatives and if one person had an exclusive and did not generate any business from it, Nancy would be shut out. He testified that he purposely pointed this out to Penberthy and that Penberthy was "agreeable" when he heard this explanation.

During the time he was with Nancy, Penberthy received commissions on sales he made, from companies on his original list and others. Only one dispute over commissions while he was with Nancy appears in the record before us, which had to do with whether Penberthy was entitled to commissions on sales Nancy made to other divisions or subsidiaries of one of Penberthy's clients where the subsidiary had contracted with Nancy directly or through other sales representatives. Penberthy claimed commissions on all accounts. The parties met and Grasso testified that it was resolved by allocating to Penberthy the major original account and to others the smaller accounts. However, Penberthy's entitlement to the commissions on the smaller accounts constituted part of his claim at trial.

After he was terminated, Penberthy continued to receive commissions on the same accounts to the extent they continued to do business with Nancy. At trial Penberthy claimed that he was owed $11,170 in commissions for business obtained by Nancy after he left and $1,619 in commissions for business done by Nancy before he left, for a total claim of $12,789.

Penberthy's position at trial was that once he made an initial contact with a potential client, the client was his and any business that client subsequently gave to Nancy would become his account and that this was supported by an agreement that the companies on his original list would be his accounts. Nancy's position at trial was that Penberthy was not entitled to commissions on accounts unless the sales were directly generated by his efforts and that there was no agreement to give him exclusive rights to the 48 companies on his list.

The jury returned a verdict in favor of Penberthy for $10,000. This appeal followed. Nancy raises three issues on appeal, relating to instructional error and the admission of evidence.

■ Nancy's first point is that the trial court erred in submitting Instruction No. 5, Penberthy's verdict director, because it failed to hypothesize Penberthy's version of the disputed terms of the agreement. We agree.

Instruction No. 5 was patterned after MAI 26.06 and reads as follows:

Your verdict must be for plaintiff if you believe:

First, plaintiff and defendant entered into an agreement whereby plaintiff agreed to be a sales representative for defendant, and defendant agreed to pay plaintiff 5% sales commission on gross revenue produced by plaintiff's accounts for at least one year after termination of the agreement by defendant, and

Second, plaintiff performed his agreement, and

Third, defendant failed to perform his agreement, and

Fourth, plaintiff was thereby damaged.

■ MAI 26.06 was adopted by the Supreme Court as appropriate for the submission of the two-element dispute of 1) what agreement was made and 2) whether that agreement was breached. *Boswell v. Steel Haulers, Inc.* 670 S.W.2d 906, 912 (Mo.App. 1984); *Reed Stenhouse, Inc. of Missouri v. Portnoy,* 642 S.W.2d 947, 952 (Mo.App. 1982); *Braun v. Lorenz,* 585 S.W.2d 102, 107 (Mo.App.1979). Where the terms of the agreement are in dispute, the verdict directing instruction must hypothesize the proponent's version of the agreement actually made. *Portnoy, supra,* 642 S.W.2d at 951. "Where a dispute exists as to one or more of the terms of the agreement relied on by the claimant to support recovery, that issue must be hypothesized in the verdict directing instruction." *Braun, supra,* 585 S.W.2d at 107; *Schlemer v. Connell Agencies,* 741 S.W.2d 307, 308 (Mo.App. 1987). Failure to do so is prejudicial error. *Portnoy, supra,* 642 S.W.2d at 951; *Schlemer, supra,* 741 S.W.2d at 308.

As we have previously observed, the parties were in sharp disagreement over what was required to entitle Penberthy to commissions on an account. However, this issue was not submitted to the jury by Instruction No. 5. Instead, the undisputed terms of the contract were submitted to the jury. Instruction No. 5 presented the bilateral agreement in paragraph one as one in which Penberthy agreed "to be a sales representative" and defendant agreed "to pay [Penberthy] 5% sales commissions on gross revenue produced by [Penberthy's] accounts." Paragraph two submitted to the jury only the issue of whether Penberthy performed that agreement; that is, whether he acted as a sales representative. What Penberthy had to do to entitle him to be paid commissions on any particular account was at the heart of the case. Yet this issue was entirely left out of the jury instruction. The jury was only required to find that Penberthy became a sales representative for Nancy.

■ The issue was not reached by implication by the characterization of Nancy's agreement as one to pay a 5% commission on "plaintiff's accounts" since all of the facts submitted in Instruction No. 5 could be resolved in favor of Penberthy without any finding by the jury that he procured any account. *Williams v. Enochs,* 742 S.W.2d 165, 168–69 (Mo. banc 1987). The submission of Instruction No. 5 was prejudicially erroneous and requires reversal and a remand for new trial. *Portnoy, supra,* 642 S.W.2d at 951; *Schlemer, supra,* 741 S.W.2d at 308.

Nancy raises two other points relating to admission of evidence. Since they involve issues which may occur on retrial, we will address them. Nancy claims the trial court erred in admitting into evidence deposition testimony of John Robb relating to his understanding of the agreement between Nancy and Penberthy. Robb left Nancy's employ in March of 1983 and was not employed by Nancy at the time he was deposed.

The specific testimony to which Nancy objects is as follows:

Question: Was it understood between Nancy Transportation that they were to pay commissions on all other businesses which were indicated in this list?

Answer: Terry was supposed to get credit for any shipments that he handled or that we enjoyed the business from, from any of those accounts that are on that list.

\* \* \* \* \* \*

Question: What was your understanding of the sales agreement with respect to Terry's pay?

Answer: That he would be—that Terry would be paid five percent of the gross amount of moneys that came from that particular company that he worked for or that—

Question: Let me ask you this. Was it your understanding that he was to get five percent of the gross of all of the business or just the business that he procured?

Answer: No, he would get five percent of all the business.

\* \* \* \* \* \*

Question: Now, was it your understanding that Terry was to get paid for all Anheuser–Busch business?

Answer: Anheuser–Busch is one of the companies that was listed on the list that we had agreed not to call upon these people when we took him in and hired him. I think the number, if you look, is on there. Does it say Anheuser–Busch?

■ Nancy objected to the testimony on the grounds that a witness cannot testify to his "understanding" of a document and that the witness was not an officer of Nancy at the time he testified. The trial court overruled the objection on the grounds that the testimony constituted an admission against interest.

■ Because Robb was no longer with Nancy at the time his deposition was taken, his statements cannot be admissions against interest. *Henry v. First Nat. Bank of Kansas City*, 232 Mo.App. 1071, 1088, 115 S.W.2d 121, 133 (Mo.App.1938); 31A C.J.S. Evidence § 355 at 861–62 (1964). In order to be binding upon a corporation, statements made in depositions must be made by a corporate officer who is so employed at the time he is deposed. *See German v. Kansas City*, 512 S.W.2d 135, 145–46 (Mo. banc 1974).

■ In a breach of contract action, where the terms of a contract are ambiguous and in dispute, the court may consider the interpretation or understanding placed upon the contract by the parties, as shown by their acts and conduct. *Leggett v. Missouri State Life Insurance Company*, 342 S.W.2d 833, 852 (Mo. banc 1960); *O'Brien*

*v. Missouri Cities Water Co.*, 574 S.W.2d 13, 19–20 (Mo.App.1978); *Rouggly v. Whitman*, 592 S.W.2d 516, 519–20 (Mo.App. 1979). However, as a general rule, a witness cannot testify to his "understanding" of a contract. *Jordan v. Daniels*, 224 Mo. App. 749, 761, 27 S.W.2d 1052, 1058 (Mo. App.1930); *Davis v. Geiger*, 212 S.W. 384, 387–88 (Mo.App.1919). This case does not fall within the recognized exception to this rule expressed in *Carvitto v. Ryle*, 495 S.W.2d 109, 114 (Mo.App.1973). The motive, intention or belief of Robb was not in issue. The facts can and should be presented by the acts and conduct of the parties. Accordingly, on retrial Robb's deposition testimony of his "understanding" of the sales agreement should not be admitted.

For its last point Nancy asserts that the trial court's rulings on the admissibility of some of Penberthy's testimony were erroneous. We have examined these rulings and find that they were within the discretion of the trial court.

The judgment of the trial court is reversed and the case is remanded for a new trial.

CRANDALL, C.J., and REINHARD, J., concur.