**MERIDIAN CREATIVE ALLIANCE, LLC, Plaintiff-Appellant/Respondent,**

v.

**O'REILLY AUTOMOTIVE STORES, INC., Defendant/Counterclaim Plaintiff-Respondent/Cross-Appellant,**

v.

**Meridian Creative Alliance, LLC, Bob Bryant, James Lewis, John Dillon and Ron Byerly, Counterclaim Defendants-Respondents.**

Nos. SD 34161, 34175 & 34189

Missouri Court of Appeals, Southern District, **Division Two.**

Filed: March 24, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied April 17, 2017

Application for Transfer Denied June 28, 2017

Attorneys for Appellant/Respondent Meridian—W. James Foland, Robert H. Houske, Joseph J. Roper of Kansas City, MO; Monte Paul Clithero of Springfield, MO.

Attorneys for Respondent/Cross-Appellant O'Reilly—Charles B. Cowherd, Jason C. Smith, Derek A. Ankrom of Springfield, MO.

Attorneys for Respondents Bryant, Lewis, & Dillon—Monte P. Clithero of Springfield, MO.

Attorneys for Respondent Byerly—Brian D. Malkmus, Jared J. Robertson of Springfield, MO; William H. Johnson (pro hac vice) of Manning, SC.

Before Rahmeyer, J., Scott, J., and Francis, Jr., J.

PER CURIAM.

Meridian Creative Alliance, LLC ("Meridian") and O'Reilly Automotive Stores, Inc. ("O'Reilly") entered into a series of both verbal and written contracts, culminating in a 2007 written contract for the provision of services for radio and print advertising. O'Reilly terminated the contract in 2008; Meridian sued. Meridian claimed that it was to be the "exclusive" agency for O'Reilly's media advertising, which O'Reilly denied, alternatively claiming that Meridian had breached the contract. O'Reilly also asserted several ancillary counter and third-party claims that were tried in the same trial: the counterclaim was against Meridian and its three principals for a breach of the contract; the third-party claim was against Ron Byerly, O'Reilly's former employee who had negotiated the contract, for a breach of fiducia-

ry duty.[1] After seventeen days of trial, the jury returned verdicts in Meridian's favor on its claims against O'Reilly, and against O'Reilly on its counter and third-party claims.

Meridian appeals, claiming the trial court erred in failing to award prejudgment interest on the judgment. O'Reilly cross-appeals, raising six points: the first claims error in allowing a total of nine peremptory challenges; then two points charge instructional error; two points complain of failure to grant JNOV; and a final point charges juror misconduct by injecting extrinsic evidence into the jury's deliberations.

■ For ease of discussion and because it effectively disposes of two of O'Reilly's complaints, we first address O'Reilly's Point II claim of error in submitting Instruction No. 7, Meridian's verdict director for breach of contract. At trial, the parties were in sharp disagreement whether the contract required O'Reilly to employ Meridian—and only Meridian—to procure radio and print advertising. The 2007 written contract at issue stated, in pertinent part, "O'Reilly agrees to use [Meridian] as *its agency* for radio and print advertising during the term of this agreement." (Emphasis added.) The trial court ruled, prior to the trial, that the language in the contract, "its agency," was ambiguous as to whether it meant "exclusive" and, thus, was an issue for the trier of fact after hearing all the evidence. Despite that determination that the language was ambiguous and the disagreement of the parties as to what the language meant, the trial court submitted as a verdict director Instruction No. 7,

which incorporated the ambiguous contract term ("its agency") without any definition or guidance in defining that term.

O'Reilly claims this was error; that Instruction No. 7 did not require the jury to resolve the central issue—whether the 2007 contract was "exclusive"—a finding necessary to sustain Meridian's theory of liability for breach of the contract. We agree.

■ Instruction No. 7 was based on MAI 26.06. "MAI 26.06 was adopted by the Supreme Court as appropriate for the submission of the two-element dispute of 1) what agreement was made and 2) whether that agreement was breached." *Penberthy v. Nancy Transp., Inc.*, 804 S.W.2d 404, 407 (Mo. App. E.D. 1991). "Where a dispute exists as to one or more of the terms of the agreement relied on by the claimant to support recovery, that issue must be hypothesized in the verdict directing instruction." *Id.* (internal quotations and citation omitted). "Failure to do so is prejudicial error." *Id.*

Instruction No. 7 provided:

Your verdict must be for Plaintiff Meridian and against defendant O'Reilly if you believe:

First, Meridian entered into *an* agreement whereby Meridian agreed to perform *certain* radio and print advertising services and O'Reilly agreed that it was *required to use plaintiff Meridian as its agency* for radio and print advertising during the term of the agreement, and

Second, plaintiff Meridian performed its agreement, and

---

1. O'Reilly's First Amended Counterclaim alleged six counts against the three principals of Meridian (Bob Bryant, James Lewis, John Dillon) and Byerly. The claims were for Fraudulent Misrepresentation (Meridian, Bryant, Lewis, and Dillon), Negligent Misrep-

resentation (Meridian, Bryant, Lewis, and Dillon), Fraudulent Misrepresentation (Byerly), Negligent Misrepresentation (Byerly), Breach of Fiduciary Duty (Byerly), and Civil Conspiracy (all counterclaim defendants).

Third, defendant O'Reilly failed to perform its agreement, and

Fourth, plaintiff Meridian was thereby damaged.

(Emphasis added.)

Initially, the verdict director refers to the parties entering into "an" agreement. The parties had a long history of oral and written contracts. The details of all of the oral and written contracts were discussed for days throughout the trial. The jury instruction did not instruct the jury that the only contract at issue in the lawsuit was the 2007 written contract, which encompassed the years 2008-2013. The jury could have found that the hand-shake deal of the early 2000's or the contract of 2005 that actually used the words "exclusive" still applied to this claim for damages by Meridian.

Although Meridian claims that there was no doubt that the jury knew which contract was at issue, we cannot be sure that is accurate. The transcript was approximately 4,000 pages. The parties spent hours delving into the prior oral and written contracts. Many of the objections and rulings involved evidence that would not have been relevant to the 2007 written contract dispute but may have been relevant on some of the counterclaims and third-party claims. There are many ways the jury could have been misled after hearing all of the evidence of the parties' dealings. The jury must rely upon the court to give it the correct law in the matter by way of the formal instructions. In this case, the jury was not instructed by the court that the 2007 written contract was the contract at issue in Instruction No. 7.

The confusion about which contract was at issue is compounded by other language in the verdict director. The first paragraph continues that Meridian agreed to perform "certain" radio and print advertising services for O'Reilly and O'Reilly agreed that it was "required" to use Meridian as "its agency" for radio and print advertising. The jury could have found that the choice was Meridian's whether to perform certain radio and print advertising. There certainly was ample testimony that Meridian was actually under no obligation to purchase any advertising for O'Reilly if it could not meet O'Reilly's "price point." [2] The word "certain" in the verdict director implies that Meridian had the choice whether to perform the contract and, if they chose to do so, O'Reilly had to pay.

Further, and most importantly, the jury instruction does not instruct the jury that O'Reilly had to use Meridian as its exclusive agency for all radio and print advertising, nor does it use the word "sole" agency. Thus, the court instructed the jury that they must find for Meridian if O'Reilly entered into a contract, which O'Reilly admittedly entered, when the real issue was the legal effect of the words in the contract. Did "its agency" mean exclusive or sole agency, or one of multiple agencies engaged by O'Reilly?

Because the contract used the words "its agency," the jury could have found that O'Reilly was obligated to pay Meridian without determining whether "its agency" in the contract meant that the contract was exclusive. There is no question that a business may hire an agency as "its" agency but that agency is not an exclusive agency. In this case, O'Reilly could have

---

**2.** An extended discussion of the complicated and, apparently, unique commission system devised by Byerly, who was the vice president of advertising, marketing, and training, would serve no purpose for a resolution of the issue before us. Suffice it to say, the unique commission system is the subject of the third-party claim by O'Reilly against its former employee.

hired ten different companies as "its" agency for a different or the same job of purchasing media. The jury had to determine whether this particular contract, when it was negotiated, was intended to be an exclusive contract.

The failure to hypothesize the critical issue is prejudicial. *Penberthy*, 804 S.W.2d at 407. Instruction No. 7 was misleading and prejudicial to O'Reilly because of the uncontradicted evidence at trial that indicated that the word "exclusive" was deliberately removed from the contract with the knowledge and input of both parties and their attorneys. Even after the contract was signed, the negotiating party for Meridian attempted to put the word "exclusive" back into the contract and was told by the O'Reilly employee in writing that adding the term "exclusive" to the contract was a nonstarter. The reason for the omission of an exclusive contract was explained to the Meridian negotiator for the contract. Meridian was informed by O'Reilly that O'Reilly was considering the purchase of another company that might have its own advertising contracts and it was not going to be bound to an exclusive contract with Meridian. The jury was not told in the instruction that Meridian had to prove that in the contract the parties agreed that Meridian had the exclusive right to place radio, newspaper and shared mail advertisements for O'Reilly. At issue was the intent of both parties when the contract was negotiated. The instruction does not correctly posit the central factual issue to be determined by the jury— whether the parties entered into an exclusive agreement where O'Reilly would use Meridian, and only Meridian, for its media advertisements.

 Meridian counters in its argument that the word "exclusive" was mentioned in the three and one-half week trial 694 times—that is, over eleven days of evidence presentation at trial, once every six minutes—to support its claim that the jury understood that exclusivity was the issue. That argument favors the necessity of giving the jury the correct factual determination. As noted above, the jury instructions are the sole source of law given to the jury by the court. The jury is told that they must be guided by the instructions of the court. To then present to the jury the law which does not mention the word "exclusive" or instruct the jury that the law is that Meridian can only recover if the 2007 contract gave them the right to be the exclusive or sole agency of O'Reilly potentially misled or confused the jury.[3]

To reiterate, the trial judge determined that the 2007 contract was ambiguous as to exclusivity, raising a fact issue to be submitted to the jury. *Graham v. Goodman*, 850 S.W.2d 351, 354 (Mo. banc 1993). The verdict director, thus, had to set out Meridian's claim as to the contract meaning. *Id.* Instruction No. 7's failure to do so, which per *Penberthy* is "prejudicial error" (804 S.W.2d at 407), was compounded by its further failure to include any "guideline

---

3. The alternative verdict director tendered by O'Reilly, Instruction No. C, did identify the years of the contract and used the words "exclusive" agency as set forth below:

Your verdict must be for plaintiff Meridian Creative Alliance, LLC and against defendant O'Reilly Automotive Stores, Inc. if you believe:

First, Meridian Creative Alliance, LLC and O'Reilly Automotive Stores, Inc. entered into an agreement whereby Meridian agreed to act as O'Reilly's agent for radio and print advertising and O'Reilly agreed to use Meridian as its exclusive agency for radio and print advertising for the years 2009-2013, and

Second, Meridian performed Meridian's agreement, and

Third, O'Reilly failed to perform O'Reilly's agreement, and

Fourth, Meridian was thereby damaged.

by way of instruction" to direct jurors in their finding as to the contract term in dispute (*i.e.*, "its agency"). *Busch & Latta Painting Corp. v. State Highway Comm'n*, 597 S.W.2d 189, 200 (Mo. App. W.D. 1980). Because of this prejudicial error, Point II is granted. Meridian's verdict based on Instruction No. 7 is reversed.

■ Point III must also be granted on the same basis. Instruction No. 8[4] allowed the jury to find for Meridian if O'Reilly breached an implied covenant of good faith and fair dealing in setting its "cost point" and claiming a breach of the contract.[5] The instruction does not posit the issue of the exclusivity of the contract and allowed for recovery even if the jury found in favor of O'Reilly in Instruction No. 7. Thus, even if the jury found that the contract was not exclusive, the verdict director allowed the jury to find that O'Reilly breached a covenant of good faith and fair dealing. That finding would have provided for an inconsistent verdict. If there was no exclusive contract, there can be no breach of a covenant of good faith and fair dealing. The implied duty of good faith is not a separate claim beyond or divorced from the contract. The covenant cannot give rise to new obligations not otherwise contained in the contract's express terms. *Comprehensive Care Corp. v. RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996); *Jennings v. Bd. of Curators of Missouri State Univ.*, 386 S.W.3d 796, 798 (Mo. App. S.D. 2012) (quoting *Comprehensive Care*); *see also Schell v. LifeMark Hosps. of Missouri*, 92 S.W.3d 222, 230-31 (Mo. App. W.D. 2002) (describing at length what the duty of good faith and fair dealing is *not*). The critical issue of whether the contract was exclusive is a precursor to obtaining judgment on a claim of a breach of the implied duty of good faith.[6] Point III must also be granted.

---

4. Instruction No. 8 provided:

On plaintiff Meridian's claim for breach of the covenant of good faith and fair dealing, your verdict must be for plaintiff Meridian if you believe:

First, defendant O'Reilly set the cost per point requirements in 2007 for radio advertising in 2008, and

Second, defendant O'Reilly terminated the 2007 Radio/Media Agreement claiming an increase in cumulative cost per point of more than 3% from 2007 to 2008, and

Third, such termination was intended by defendant O'Reilly to avoid its contractual obligations, and

Fourth, defendant O'Reilly thereby denied plaintiff Meridian the expected benefit of the contract, and

Fifth, plaintiff Meridian was thereby damaged.

5. Again, a detailed analysis of the method of determining remuneration is unnecessary for a resolution of a claim that the jury instruction was submitted in error.

6. O'Reilly's proposed alternative, Instruction No. D, informs the jury of the law that this claim cannot give rise to new obligations not contained in the contract's terms:

In the contract in this case, there is an implied promise of good faith and fair dealing. This means that neither party will do anything to unfairly interfere with the right of any other party to the contract to receive the contract's benefits; however, the implied promise of good faith and fair dealing cannot give rise to new obligations not otherwise contained in the contract's terms. Plaintiff Meridian Creative Alliance, LLC contends that defendant O'Reilly Automotive Stores, Inc. violated the duty to act in good faith and fairly under the contract.

Your verdict must be for plaintiff Meridian Creative Alliance, LLC and against defendant O'Reilly Automotive Stores, Inc. if you believe:

First, Meridian and O'Reilly entered into a contract whereby Meridian agreed to act as O'Reilly's agent for radio and print advertising and O'Reilly agreed to use Meridian as its exclusive agency for radio and print advertising for the years 2009-2013, and

Second, Meridian did all, or substantially all, of the significant things that the contract required it do, and

Third, all conditions required for O'Reilly's performance had occurred, and

The judgment on the claim of Instruction No. 8 is also reversed.[7]

■ We now address O'Reilly's first point that the trial court erred in allowing nine rather than six peremptory challenges to potential jurors. At common law, there was no right of peremptory challenge in civil actions. *Elfrink v. Burlington Northern R. Co.*, 845 S.W.2d 607, 613 (Mo. App. E.D. 1992). Section 494.480.1, RSMo 2000, provides:

1. In trials of civil causes each party shall be entitled to peremptorily challenge three jurors. When there are multiple plaintiffs or defendants, all plaintiffs and all defendants shall join in their challenges as if there were one plaintiff and one defendant. The court in its discretion may allocate the allowable peremptory challenges among the parties plaintiff or defendant upon good cause shown and as the ends of justice require. In all cases, the plaintiff shall announce its challenges first.

Although Meridian, the Meridian principals, and Byerly claim that, in essence, the trial judge was "forced to try two separate lawsuits at once," neither party claims error that there was one trial combining the claims. The trial court had the prerogative to separate the trials or to exercise its discretion in following section 494.480 in the allocation of six peremptory challenges between the litigants. Thus, allowing more than six peremptory challenges was error.

■ The determination that it was error to allow more than six peremptory challenges does not end our inquiry, however. The question that must be answered is whether prejudice must be shown in order to prevail. In a case in which the allocation of the six peremptory strikes was challenged, our Supreme Court posited, "a judgment will not be reversed unless the error in awarding peremptory challenges to a litigant, or to multiple litigants having the same interest, is shown to be prejudicial." *Carter v. Tom's Truck Repair, Inc.*, 857 S.W.2d 172, 177 (Mo. banc 1993).[8]

In *Charlton v. Jeffries*, 911 S.W.2d 629, 630 (Mo. App. E.D. 1995), the court granted three extra peremptory challenges. Two of the three jurors who signed the 10-2 verdict would not have been on the panel had just six challenges been used. *Id.* at 630-31. The court stated, "If the court had sustained plaintiff's objection to their participation, none would have been eligible" and "[o]ne of the two was necessary to reach the minimum of nine jurors required for a verdict. Thus, the error allowed a juror necessary to the verdict to serve although not eligible. The prejudice is obvious." *Id.*

■ We are confronted with a different factual situation. Nine peremptory challenges were split between the parties. Under these unique facts, if all of the other parties shared only three peremptory strikes and, if O'Reilly had been given and taken three peremptory strikes of jurors for a total of six peremptory challenges, nine jurors signed the verdict without the

---

Fourth, O'Reilly's actions unfairly interfered with Meridian's receipt of the contract's benefits, and

Fifth, O'Reilly's conduct did not comport with Meridian's reasonable contractual expectations, and

Sixth, Meridian was thereby damaged.

7. Meridian's point on appeal for prejudgment interest is moot because the case has been remanded for a new trial on Meridian's claims.

8. In that case, only six peremptory challenges were allowed and the standard of review for the trial court action was whether the trial court abused its discretion. *See Carter*, 857 S.W.2d at 180-81 (Thomas, J., concurring in part and concurring in result).

use of a juror who qualified as a juror only because of the additional peremptory challenges. Because the general rule is that the person claiming error must show prejudice as a result of the error[9] and because O'Reilly has not been able to convince us of any prejudice, we must deny O'Reilly's first point.[10]

■ O'Reilly's sixth point, which expressly posits that juror misconduct "is undisputed" and treats prejudice as the sole issue, is wrong in both respects and fails for that reason alone. Further, what O'Reilly cites as misconduct evidence was only an offer of proof, and even further was hearsay, which O'Reilly does not deny, and to which opposing counsel made proper and timely objections below. The trial court did not abuse its discretion in denying a new trial on this issue. Point VI is denied.

■ Finally, we address O'Reilly's complaints that the trial court erred in not granting JNOV on each of Meridian's claims. In Point IV, as to Meridian's breach of contract claim, O'Reilly argues that there was no substantial evidence that O'Reilly agreed to use Meridian as its exclusive agency for radio and print advertising under the 2007 contract. In Point V, as to Meridian's good faith/fair dealing claim, O'Reilly claims there was no proof that it breached the agreement or that Meridian complied with cost-per-point limitation in the contract or was entitled to

any compensation. In reviewing each of these claims, we view the evidence in the light most favorable to the result reached by the jury, and we give the plaintiff the benefit of all reasonable inferences and disregard evidence and inferences that conflict with the jury verdict and only reverse if there is a "complete absence of probative fact to support the jury's conclusion." *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. banc 2007).

Given this standard of review, and mindful that O'Reilly has not made any challenges to the evidence that was admitted at trial, neither of O'Reilly's submissibility challenges is persuasive. We deny O'Reilly's Points IV and V.

The judgments of Meridian on its claims against O'Reilly are reversed and remanded; the judgments against O'Reilly on its claims in favor of Meridian, Bryant, Lewis, and Dillon are affirmed; the judgments in favor of Byerly are affirmed.

---

9. "In order to prove the existence of prejudice, the complaining party must show that it exhausted its peremptory challenges and that a prospective juror, who the challenging party would have otherwise stricken, served on the jury." *Carter*, 857 S.W.2d at 178.

10. *See Kidd v. Chicago, R.I. & P. Ry. Co.*, 310 Mo. 1, 274 S.W. 1079, 1094 (Mo. 1925) (the court did not reverse, but trial courts were warned to adhere to established practice, when each side was given four strikes where (1) none of the "extra" panelists served on the jury, (2) none appeared unqualified or biased, and (3) it did not appear the verdict would have been any different); *see also Khoury v. ConAgra Foods, Inc.*, 368 S.W.3d 189, 203 (Mo. App. W.D. 2012) ("A party does not have a right to a specific juror or to representation on the jury of a particular point of view.") (internal quotation and citation omitted).